2004 WY 166

**Robert Frederick SELVEY, Appellant (Defendant),**

v.

**Shirley Jean SELVEY, Appellee (Plaintiff).**

No. 03–237.

Supreme Court of Wyoming.

Dec. 16, 2004.

Representing Appellant: Donald E. Miller of Graves, Miller & Kingston, P.C., Cheyenne, Wyoming.

Representing Appellee: William D. Hjelmstad, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and GUTHRIE, D.J.

VOIGT, Justice.

[¶1]   Shirley J. Selvey (Mother) and Robert F. Selvey (Father) were divorced in August of 2001.   They stipulated to joint legal custody of their child, R.S., with physical custody alternating yearly.   In February of 2003, Mother moved to Missouri with R.S. and petitioned to modify the decree.   She alleged in her petition that Father had engaged in prior inappropriate sexual behavior with two older daughters, and requested that visitation with R.S. be restricted.   Father answered by filing his own petition for modification claiming that Mother was not stable or fit to care for R.S. The district court heard the matter and granted Mother primary custody of R.S. and ordered that Father's visitation with R.S. be supervised.   Father appeals this determination.   We affirm.

**ISSUE**

[¶2]   Father presents only one issue for our review:

> Did the trial court abuse [its] discretion when it allowed into evidence allegations that occurred prior to the original custody agreement and decree of divorce?

Mother presented five issues in her brief; however, Father's statement sufficiently characterizes the dispositive issue in this appeal.

## FACTS

[¶ 3] In 1983, P.S. was born to Mother and Father. Two years later, Mother and Father were married in Casper, Wyoming. Mother had a daughter from a previous marriage, C.R., who was approximately fourteen years old when Mother and Father married. A third daughter, R.S., was born in 1992.

[¶ 4] Father has allegedly abused each of these three girls at one time or another. With regard to the oldest daughter, C.R., Mother testified that in approximately 1986, the Department of Family Services (DFS) filed a complaint alleging that C.R. "would wake up in the middle of the night and [Father] would be standing over the top of her at the side of her bed." At the time the complaint was filed, Father had gone to work in Alaska. Mother testified that DFS informed her that they would take C.R. from the home if Father returned. C.R. was sent to live with her biological father, and Mother testified that nothing came of the DFS charges.

[¶ 5] In 1999, the next oldest daughter, P.S., was taken into protective custody in Ohio after the director of a play in which P.S. was involved overheard a conversation wherein Father was verbally abusive to P.S. The director reported the incident to the Sandusky County Department of Human Services. The Sandusky County Department of Jobs and Family Services (Sandusky County DJFS) then took emergency custody of P.S. and filed a complaint. The complaint alleged specific instances of verbal, emotional, and physical abuse, and additionally alleged that Father had subjected P.S. to inappropriate sexual touching. Specifically, the complaint stated that P.S. reported that "on occasion she will wake up and her father will be sitting on the edge of her bed rubbing the inside of her leg, her lips and has put his hand on her skin directly above her breast." Father denied these allegations. Sandusky County DJFS completed an assessment and rated the case as moderate/high risk. A case plan was implemented requiring supervised visitation between P.S. and Father, and recommending that both Mother and Father complete a parenting class and attend counseling. The case plan also recommended that Father undergo a sexual offender assessment and complete all recommendations of that assessment, and that he participate in anger management.

[¶ 6] Ten months later the court found that Mother and Father had made little progress toward reunification. Sandusky County DJFS did not know where the parents were and was unable to verify compliance with the case plan. As a result, the guardian with whom P.S. had been placed was awarded legal custody, and P.S. remained with this person until she became an adult.

[¶ 7] Five months after P.S. was removed from her home, the Sandusky County DJFS filed a second complaint regarding the youngest daughter, R.S. The following facts were alleged as the basis for this complaint:

1. On August 23, 1999, Sandusky County Department of Jobs and Family Services received custody of [P.S.] due to concerns of possible inappropriate touching by her father and physical altercations between [P.S.] and her father. On August 24, 1999, a Complaint was filed on [P.S.] alleging abuse, neglect and dependency. On November 15, 1999, the parties consented to an adjudication of dependency.

2. At the time of the investigation, [Mother] had moved to Missouri with [R.S.], while [Father] had stayed behind in Sandusky County. Communications between agency personnel and the Selveys became very difficult for a time because their lawyer prohibited contact.

3. [Father], [Mother], and [R.S.] now reside in Sandusky County together. Since approval of the case plan, the Selveys have not made any progress. In addition, the caseworker has not been allowed to access [R.S.] to check on her well-being. The agency has also been informed that [P.S.] is recalling the fact that she may have been inappropriately touched by her father at an earlier age than she originally remembered. An adult daughter also allegedly reports being touched by

[Father] inappropriately when she was a teenager.

4. Recently, the Sandusky County Department of Jobs and Family Services received allegations that [R.S.] was being removed from school to be possibly home schooled. [R.S.] would then have no outside source to report any inappropriateness, if it were to occur.

5. Due to the continued lack of cooperation that the Selveys show to the agency, the fact that the agency has been denied access to [R.S.] to check on her well-being, and especially with concerns of other girls being inappropriately touched, now possibly at an earlier age, the Sandusky County Department of Jobs and Family Services requests protective supervision over [R.S.].

This complaint was eventually dismissed because the Sandusky County DJFS was unable to serve process on the parents, as no one knew where they were. Mother later testified that she and Father decided to leave Ohio because they feared R.S. would also be removed from the home; Mother stated, "the charges against [Father] were too strong not to remove her."

[¶ 8] Mother eventually filed for divorce. The stipulated divorce decree granted Mother and Father joint legal custody of R.S., with physical custody alternating yearly. The decree granted Father physical custody of R.S. during the first year following the divorce. By the time the first year ended, Mother and Father had reconciled and were living together in Casper, Wyoming. Mother and R.S. eventually left Father's home and moved to a trailer on Father's property. Approximately two months later, Mother and R.S. moved from Father's property to another residence in Casper. A short time later, Mother filed a petition to modify the divorce decree, and on the same day moved with R.S. to Missouri.

[¶ 9] In her petition to modify, Mother stated that a substantial change of circumstances had occurred since the divorce decree. In addition to the petition for modification, Mother filed a verified motion for temporary custody in which she requested that she be granted custody of R.S. and that Father's visitation be restricted until the modification petition was heard. In support of her motion, Mother alleged that Father "is an extremely controlling individual using physical and mental menacing to accomplish his will," that he had committed inappropriate sexual touching with the two other daughters, that inappropriate touching with the other daughters commenced when they turned ten years old, and that R.S. had turned ten years old and was at severe risk if left unsupervised with Father overnight. Attached to Mother's motion were records of the prior Ohio abuse allegations.

[¶ 10] Father responded by filing his own petition for modification and a temporary restraining order. Father's petition stated that a substantial change of circumstances had occurred and that he should be granted custody of R.S. until Mother underwent a psychiatric examination to prove her mental stability. As a factual basis, Father alleged that Mother had moved many times since the divorce, refused to provide her current mailing address, was delinquent in her child support payments, failed to provide health insurance for R.S., refused to allow R.S. to continue counseling, recently filed a voluntary petition for bankruptcy and was financially unstable, sought psychiatric help and was prescribed Prozac but refused to take it, and since Mother had taken custody of R.S. she had allowed Father very little visitation. Father's restraining order requested that Mother be restrained from leaving Wyoming with R.S. until a hearing was held on his petition.

[¶ 11] The day after filing his answer and counterclaim, Father went to Missouri and picked R.S. up at her school, telling her that Mother had agreed that "he could take her for a ride." He was driving a van belonging to his girlfriend. Father proceeded with R.S. to Illinois where he switched vehicles and then drove to Ohio where his brother lived. Father had informed his attorney that he would be making the trip to Missouri to see R.S.; however, he did not notify Mother or Mother's attorney that he would be in the state or that he intended to see R.S. Upon learning that R.S. did not arrive at school,

Mother contacted Missouri law enforcement officials and an "Amber alert" was issued. Police arrested Father at his brother's house in Ohio the next day and charged him with parental kidnapping. He was extradited to Missouri and released on bond.

[¶ 12] The district court began hearing both petitions to modify on July 1, 2003, with the hearing continued to August 19, 2003. At the hearing, Mother's evidence consisted of her own testimony, the trial deposition of Kathleen Wolf, R.S.'s counselor in Missouri, and the videotaped trial deposition of the older daughter, P.S. Mother described her current living situation and presented the testimony of Ms. Wolf, who reported that R.S. was doing well in her current environment. Mother also presented evidence regarding the pre-divorce allegations of sexual abuse, including P.S.'s videotaped deposition testimony explicitly describing the alleged abuse. Father's attorney regularly objected to the introduction of all evidence relating to the pre-divorce allegations.

[¶ 13] Although Father chose not to testify, apparently due to the pending custodial interference case in Missouri, he called four witnesses: Leslie Witherell, a mental health therapist who performed a sexual offender evaluation of Father after the older daughter P.S. was removed from the home in Ohio; Christine Frude, the principal at R.S.'s elementary school in Casper; Sue McConaughey, a counselor that R.S. saw in Casper; and Rebecca Gurtler, R.S.'s school counselor. Each of Father's witnesses testified that he was a good and responsible parent, and that R.S. had done well during the time that she was in his custody. Also, Ms. Witherell explained to the court that her sexual evaluation revealed no risk factors associated with sexual offending behavior.

[¶ 14] The district court's final order found that "[t]he parties are unable to make joint custody work, and a substantial change of circumstances exist to warrant a change in custody." The order also found that "[Father] has a history of being physically, mentally and sexually abusive to the female teenage children living in his home." The order granted Mother primary care, custody, and control of R.S. and allowed Father "reason-able supervised visitation...." Father timely appealed this order.

## STANDARD OF REVIEW

[¶ 15] "We review a district court's order on a petition to modify a divorce decree under an abuse of discretion standard." *Leseberg v. Taylor,* 2003 WY 131, ¶ 5, 78 P.3d 201, 202 (Wyo.2003). We will not interfere with the district court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. *Fergusson v. Fergusson,* 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002). In determining whether the district court has abused its discretion, we must decide whether it could reasonably conclude as it did. *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Fergusson,* 2002 WY 66, ¶ 9, 45 P.3d at 644. Under this standard, we view the evidence in the light most favorable to the district court's determination. *GGV v. JLR,* 2002 WY 19, ¶ 14, 39 P.3d 1066, 1074 (Wyo.2002). "We give the prevailing party all favorable inferences and do not consider the evidence presented by the unsuccessful party." *Id.*

## DISCUSSION

[¶ 16] Modification of divorce decrees is only appropriate in limited circumstances. *Pasenelli v. Pasenelli,* 2002 WY 159, ¶ 9, 57 P.3d 324, 328 (Wyo.2002) (*quoting Jones v. Jones,* 858 P.2d 289, 291 (Wyo. 1993)). A party seeking modification of the custody provision of a divorce decree bears the burden of demonstrating that: (1) a material and substantial change of circumstances affecting the child's welfare has occurred since the entry of the initial divorce decree, and (2) a modification is in the child's best interests. *Clark v. Alexander,* 953 P.2d 145, 150 (Wyo.1998); Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2003).

"This policy manifests a balance between the doctrine of finality of judgments which

is supported by the doctrine of *res judicata* and the statutes providing for modification of the provisions of a decree relating to child custody, support, and alimony. The trial court is charged with resolving that tension, and it must do so in the exercise of discretion."

*Ready v. Ready,* 2003 WY 121, ¶ 11, 76 P.3d 836, 839 (Wyo.2003) (*quoting Smith v. Smith,* 895 P.2d 37, 41 (Wyo.1995)).

[¶ 17] In his appellate brief, Father states that "the issue here is not whether there is a substantial change in circumstances, but whether pre-divorce action, which was clearly known by the parties, should have been considered by the court when making that change." Essentially, he is arguing that the district court, when making its determination of what custody arrangement was in R.S.'s best interests, should not have considered evidence of pre-divorce allegations of sexual abuse.

[¶ 18] Father makes two arguments supporting his position. First, he points to the following language of Wyo. Stat. Ann. § 20–2–204(c):

A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances *since the entry of the order in question* and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a).

(Emphasis added.) While this provision indicates that the district court may not consider pre-divorce evidence when determining whether there has been a *substantial change in circumstances,* no such limitation has been placed on the evidence available to the district court when making a *best-interests* determination. Such a limitation would severely impede the district court's ability to make a thorough and accurate assessment of what custody arrangement would best serve the child. When deciding a petition for modification, the district court's " 'prime if not sole judicial objective * * * is to serve the best interests of the child.' " *Gaines v. Doby,* 794 P.2d 566, 570 (Wyo.1990) (*quoting Henson v. Henson,* 384 P.2d 721, 723 (Wyo. 1963)). We have "always recognized that the

trial court exercises a broad discretion in the execution of its revisory powers in matters involving domestic relations." *Gaines,* 794 P.2d at 570. "The best-interest criterion of our law as the promise of our society should evoke every relevant factor, with the [weighing] to be vested in the discretion of the trial court." *Fanning v. Fanning,* 717 P.2d 346, 353 (Wyo.1986).

[¶ 19] Father's second argument relies on the concurring opinion in *Gurney v. Gurney,* 899 P.2d 52 (Wyo.1995). In *Gurney,* the parties stipulated to shared custody alternating every six months. *Id.* at 53. A short time after the decree was entered, the mother moved to a different town and the father petitioned to modify the decree. *Id.* The district court granted the father's petition and awarded him primary custody, which decision we affirmed. *Id.* at 56. The concurrence took exception to the district court's consideration of mother's pre-divorce and pre-marriage romantic relationships at the modification hearing. *Id.* at 56 (Lehman, J., concurring in result).

Here the stipulation for joint custody included representations by the parties that sharing of custody was in the best interests of the child, and those representations were made by the parties with full knowledge of each other's history. A party, based on that representation, should be estopped from later arguing at a modification hearing that the other party should lose entitlement to joint custody because of premarriage and/or predivorce lifestyle. The determination at a modification of custody hearing to go back into time to revisit a party's predivorce, and in this instance premarriage, lifestyle seems obtrusive, especially where no connection was made depicting how the premarriage lifestyle relates to the present lifestyle or parenting abilities.

*Id.* While we do not believe that a party should be absolutely estopped from presenting pre-divorce evidence in a modification hearing, we do agree that when pre-divorce evidence lacks relevance, or fails to meet other evidentiary standards, it should either be excluded or be afforded less weight. However, we will continue to leave that de-

termination to the district court. *Clark,* 953 P.2d at 150. We will then determine on appeal, if necessary, whether the evidence was appropriately weighed and admitted. *Produit v. Produit,* 2001 WY 123, ¶ 12, 35 P.3d 1240, 1244 (Wyo.2001).

[¶ 20] The doctrine of res judicata presents another limitation on what evidence may be presented. This doctrine prevents the district court from re-examining facts that were raised and fully adjudicated when the decree was entered. *CSP v. DDC,* 842 P.2d 528, 532–33 (Wyo.1992). In cases like the present, where a fact, although known to one or both parties, was neither raised nor adjudicated at the time of the decree, courts have generally allowed evidence of that fact to be considered. *See Stewart v. Stewart,* 86 Idaho 108, 383 P.2d 617, 619–20 (1963); *Harms v. Harms,* 323 Ill.App. 154, 55 N.E.2d 301, 303 (1944); *Hulm v. Hulm,* 484 N.W.2d 303, 305 (S.D. 1992); and *Rowles v. Reynolds,* 29 Tenn.App. 224, 196 S.W.2d 76, 79 (1946). *But see Swindle v. Swindle,* 242 Ark. 790, 415 S.W.2d 564, 567 (1967) and *Ostrander v. Ostrander,* 176 Wash. 669, 30 P.2d 658, 659 (1934). This is especially true where the original decree was entered without true judicial consideration of that evidence, such as by stipulation or default. 24A Am.Jur.2d *Divorce and Separation* § 982 (1998 & 2004 Supp.); 6 Am.Jur. Proof of Facts.2d, *Child Custody Modification,* 6–499, § 6 at 519 (1975); W.E. Shipley, Annotation, *Material Facts Existing at the Time of Rendition of Decree of Divorce But Not Presented to Court, as Ground for Modification of Provision as to Custody of Child,* 9 A.L.R.2d 623 (1950). This was the approach the United States Supreme Court used in *People of State of N.Y. ex rel. Halvey v. Halvey,* 330 U.S. 610, 613, 67 S.Ct. 903, 91 L.Ed. 1133 (1947):

> Facts which have arisen since the original decree are one basis for modification of the custody decree. *Frazier v. Frazier,* 109 Fla., p. 168, 147 So., p. 465; *Jones v. Jones,* 156 Fla. 524, 527, 23 So.2d 623, 625. But the power is not so restricted. It was held in *Meadows v. Meadows,* 78 Fla. 576, 83 So. 392–393, that "the proper custody of the minor child is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, ***if such facts were not presented or considered at a former hearing.***" (Italics added.) Or, as stated in *Frazier v. Frazier,* 109 Fla., p. 168, 147 So., p. 465, a custody decree "is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court and then only for the welfare of the child." The result is that custody decrees of Florida courts are ordinarily not *res judicata* either in Florida or elsewhere, except as to the facts before the court at the time of judgment. *Minick v. Minick,* 111 Fla. 469, 490–491, 149 So. 483, 492.

We find that this approach effectively balances the doctrine of finality with the district court's important role in protecting the child's best interests.

[¶ 21] Although Mother had some knowledge of the alleged abuse at the time the divorce decree was entered, it is clear that no evidence of the prior abuse was presented to the district court at the time it entered its stipulated divorce decree. Because that issue was never raised or subjected to judicial consideration, and because consideration of such evidence is clearly relevant to the district court's best interests determination in the instant case, the doctrine of res judicata cannot exclude such evidence.

[¶ 22] Father states in his appellate brief that he is not complaining "that there was not sufficient evidence to grant custody to [Mother] or that the evidence is contrary to the trial court's findings." His complaint, rather, is that the district court abused its discretion by allowing into the modification hearing evidence of pre-divorce allegations of sexual abuse. We hold that those allegations were properly admitted and considered, that the district court's decision was reasonable, and therefore find no abuse of discretion.

## CONCLUSION

[¶ 23] When determining whether there has been a substantial and material change in

circumstances warranting a modification of a divorce decree, the district court may rely only upon facts and circumstances that have occurred since the decree was entered. However, when assessing what custodial and visitation arrangement will be in the child's best interests, the district court may take into consideration relevant evidence of pre-divorce facts and circumstances, where such evidence otherwise meets evidentiary rules and does not violate the doctrine of res judicata.

[¶ 24]   Affirmed.