2007 WY 103

**Chris R. OLSEN, Appellant (Defendant),**

v.

**David M. KILPATRICK and Nikki V. Malcom, husband and wife, Appellees (Plaintiffs).**

**No. 06–190.**

Supreme Court of Wyoming.

June 28, 2007.

---

Representing Appellant: Daniel E. White of Woodard & White, P.C., Cheyenne, Wyoming.

Representing Appellees: Gay Woodhouse and Lori L. Brand * of Gay Woodhouse Law Office P.C. Argument by Ms. Woodhouse.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, JJ, and DONNELL, D.J.

VOIGT, Chief Justice.

[¶ 1] Appellant, Chris R. Olsen, challenges a district court ruling in favor of Appellees, David M. Kilpatrick and Nikki V. Malcolm, husband and wife. Appellees requested declaratory relief finding Appellant in violation of the covenants of their subdivi-

---

* Order Granting Motion to Withdraw as Co-counsel entered January 5, 2007.

sion and injunctive relief requiring Appellant to cease work on a pheasant farm he was constructing in his backyard. Appellant has removed the remnants of the pheasant farming operation but takes issue with the declarations of the district court with respect to the covenants governing the subdivision.

## ISSUES

[¶2] 1. Did the district court abuse its discretion when it entered an injunction against Appellant prohibiting him from violating the protective covenants of the subdivision where Appellant and Appellees own property?

2. Did the district court err by refusing to join all landowners in the subdivision in a declaratory judgment action regarding the construction and validity of the covenants for that subdivision?

## FACTS

[¶3] The parties to this suit own homes in a subdivision in Laramie County, the protective covenants for which were recorded in 1973. In April 2005, apparently under the impression that those covenants had expired, Appellant began erecting a structure in his back yard to house pheasants for a pheasant-farming operation. Appellant subsequently realized that the covenants had not expired, but continued to build his pheasant pen. Appellees brought suit to enjoin Appellant from continuing work on the pheasant operation and eventually amended their complaint to seek a declaratory judgment that Appellant was in violation of the covenants.

[¶4] Appellees, in their original and amended complaints, alleged that Appellant was in violation of paragraphs 8 and/or 12 of the restrictive covenants for the subdivision. Those paragraphs state as follows:

8. No business nor activity of a noxious nature may be conducted upon any lot in this subdivision, nor shall any activity be permitted which may be or may become a nuisance or annoyance to the neighborhood.

. . . .

12. No animals, livestock or poultry of any kind shall be raised, bred or kept on any lot, except that horses, dogs, cats or other household pets may be kept, provided that they are not kept, bred, or maintained for any commercial purpose.

[¶5] Appellees did not make any claims related to paragraph 4 of the covenants and did not include the text of paragraph 4 in the argument portion of their amended complaint, however, the covenants in their entirety were attached to the amended complaint as an exhibit. Appellant asserted a counterclaim alleging, *inter alia,* that Appellees were in violation of paragraph 4 of the covenants, which states as follows:

4. No structure other than one private single family dwelling together with a private garage and suitable barn or shed for horses for use in connection with said single family dwelling shall be erected, placed or permitted to remain on any of the residential lots. No lot within a designated block may be subdivided into smaller lots.

[¶6] Appellant requested dismissal of his counterclaim on the eve of trial. In the trial summary where he requested that dismissal, Appellant alleged that he was dismissing his counterclaim because the covenants for the subdivision had been abandoned "due to multiple persistent violations of the protective covenants that have allowed [sic] to proliferate in the subdivision." Appellant's counterclaim was dismissed and the matter proceeded to trial. Appellant did not present any evidence of abandonment of the covenants at trial. In fact, other than cross examining Appellees' witnesses, Appellant did not present any evidence. Appellant's argument was that Appellees had not met their burden for obtaining injunctive relief, rendering it unnecessary for Appellant to present any affirmative evidence. The district court found in favor of the Appellees. The court issued an injunction preventing Appellant from continuing work on his pheasant farm and requiring him to remove poles he had placed on his land as part of the project. The district court found that Appellant was in violation of paragraphs 4, 8, and 12 of the protective covenants. This timely appeal followed.

## PERMANENT INJUNCTION

[¶ 7] Appellant's first claim is that the district court improperly enjoined Appellant:

1. From conducting preliminary work, preparation for, or construction of any game bird housing facility or game bird pen proposed by [Appellant] on the property;

2. From maintaining on the property any structure, whether completed or uncompleted, placed or erected on the property for the purpose of constructing any game bird housing facility or pen, including but not limited to, the existing large wooden "telephone poles" still placed upon the property as of April 25, 2006;

3. From breeding, keeping, raising, or housing any poultry or game bird of any kind on the property;

4. From displaying signs on the subject property for public view advertising a game bird facility[.]

[¶ 8] The Permanent Injunction also affirmatively ordered that Appellant "[r]emove within thirty (30) days of April 25, 2006, all structures from the property, whether completed or uncompleted, which were constructed to house game birds, including but not limited to, the existing large wooden 'telephone poles' currently placed upon the property."

## STANDARD OF REVIEW

■ [¶ 9] "Although actions for injunctive relief are authorized by statute, Wyo. Stat. §§ 1–28–101 to –111 (1988 & Supp. 1996), they are, by nature, requests for equitable relief which are not granted as a matter of right but are within the lower court's equitable discretion." *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo.2003). We will, therefore, review the district court's decision to grant injunctive relief for abuse of discretion. "Judicial discretion is a composite of many things, among which are conclusions drawn

from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 11, 77 P.3d 412, 416 (Wyo.2003) (citation omitted).

## DISCUSSION

■ [¶ 10] Appellant's main concern appears to be that he feels the district court improperly relied on paragraph 4 of the protective covenants in ordering him to remove the nascent pheasant pen structure from his property.[1] However, this Court "may affirm a district court's decision on any proper legal grounds supported by the record." *Del Rossi v. Doenz*, 912 P.2d 1116, 1119 (Wyo.1996) (citation omitted).

■ [¶ 11] Covenants are contractual in nature and are therefore interpreted and enforced according to the principles of contract law. *Goglio v. Star Valley Ranch Ass'n*, 2002 WY 94, ¶ 18, 48 P.3d 1072, 1079 (Wyo. 2002). "We consider the contract as a whole, taking into consideration the relationship between the various parts." *Polo Ranch*, ¶ 24, 61 P.3d at 1263. We are, therefore, not convinced that the district court erred in relying on paragraph 4 in issuing its injunction. Our law of contract, under which the covenants must be interpreted, plainly states that a contract is to be interpreted as a whole. *Id.* Appellant contends that it was improper for the district court to rely on paragraph 4 because Appellees did not specifically allege a violation of that portion of the covenants and because the district court had dismissed the counterclaim, the only pleading to mention paragraph 4, before trial. However, the covenants were before the court in their entirety, having been properly entered into evidence at trial. Appellees entered photographs of the pheasant pen into evidence at trial. The district court relied on the photographs, which were in evidence, to determine that the pheasant pen violated

---

1. The Findings of Fact and Conclusions of Law accompanying the Permanent Injunction state that the "proposed game bird pen was intended to house 500 pheasant chicks, and the existing erected structure consisting of a ring of large

'telephone poles' are the type of improvement that the covenant drafters intended to prohibit and this structure violates paragraph 4 of the Declaration of Protective Covenants[.]"

paragraph 4, the text of which was also in evidence. While the issue may not have been squarely before the court, the court's consideration of paragraph 4 does not appear to constitute an abuse of discretion under these circumstances. However, we need not enter into an in-depth analysis of the district court's discretion in this area because the court's order can be upheld on another basis in the record.

[¶ 12] "Where an agreement is in writing and the language is clear and unambiguous, the parties' intent is to be secured from the four corners of the contract." *Id.* Paragraph 12 of the covenants prohibits "poultry of any kind" from being "raised, bred or kept on any lot, except that horses, dogs, cats or other household pets may be kept, provided that they are not kept, bred, or maintained for any commercial purpose." The common usage definition of poultry is "domesticated birds that serve as a source of eggs or meat and that include among commercially important kinds chickens, turkeys, ducks, and geese and among kinds chiefly of local interest guinea fowl, peafowl, pigeons, pheasants, and others." *Webster's Third New International Dictionary* 1777 (2002). A pheasant farming operation, commercial or otherwise, is clearly a violation of paragraph 12 of the covenants. No evidence attacking the validity or construction of paragraph 12 was properly before the court at trial.[2] We can therefore uphold the district court's decision to issue injunctive relief prohibiting Appellant from continuing with his operation based on the clear violation of paragraph 12 alone. As for the affirmative requirement that Appellant remove the pheasant pen from his land, it was not an abuse of discretion for the court to consider the pen a part of the overall pheasant farm violation[3] and order its removal from Appellant's land.

[¶ 13] Appellant implies in his argument that the district court should not have granted the injunction because Appellant had complied with the temporary injunction in place during the litigation and because he had evinced intent to pursue only lawful means to implement his pheasant farming operation. However "[a]n action for injunction does not become moot merely because there is compliance with the injunction. The equitable jurisdiction of the district court will not be reversed absent a strong showing of abuse. A defendant carries a heavy burden of persuasion." *Reno Livestock Corp. v. Sun Oil Co.*, 638 P.2d 147, 151 n. 2 (Wyo.1981) (citations omitted). Appellant's intention to comply with the covenants does not predate this litigation, or even the preliminary injunction entered by the trial court. Evidence was introduced at trial that, before being sued, Appellant continued to build his pheasant pen after he realized that the covenants in his subdivision had not expired. The district court also placed weight on the fact that Appellant had repeatedly promised to take down the structural poles for the pheasant pen but had failed to remove those poles as of the date of the litigation. Given the evidence on record showing that Appellant had previously been disposed to run afoul of the subdivision's covenants, the district court did not abuse its discretion in granting injunctive relief, even in the face of Appellant's compliance with the preliminary injunction.

## DECLARATORY RELIEF

[¶ 14] "[W]e need not address issues regarding the propriety of a judgment premised on Wyoming's version of the Uniform Declaratory Judgments Act where there was in the record another proper basis for upholding the judgment of the trial court." *Revelle v. Schultz*, 759 P.2d 1255,

---

2. Appellant did attempt to cross-examine several witnesses as to the possible existence of a child's 4H project in the subdivision involving several chickens, against which the covenants had never been enforced. However, as none of the witnesses had any firsthand knowledge of such a violation of paragraph 12, none of that evidence was admissible and the court could not have properly considered it.

3. The covenants permit enforcement against any attempted as well as actual violation of the covenants. Appellees argued that the poles represented a continuing attempt to violate the covenants as their only purpose was as part of the pheasant farming operation. Appellant did not refute that argument except to continue to assert his intention to remove the poles.

1258 (Wyo.1988). In *Revelle*, this Court found that

> [t]he trial court did, indeed, include in its order a provision declaring the rights of the parties vis-a-vis the covenant as coordinate with the injunctive prayer. However, the trial court also found the covenant to govern the relations of these parties insofar as the controversy between them was concerned and, in addition, granted injunctive relief[.]

*Id.* That is exactly the case here as well. The trial court provided effective relief through injunction; it was unnecessary to go further. "Wyoming has long held that a declaratory judgment action should only be maintained where it would serve a useful purpose." *Morris v. Farmers Ins. Exch.*, 771 P.2d 1206, 1212 (Wyo.1989). We, therefore, reverse the portions of the district court's judgment that constitute declaratory relief as the injunctive relief provided effectively resolves the dispute between these two parties.

### CONCLUSION

[¶ 15] The trial court did not abuse its discretion in granting injunctive relief because Appellant was in clear violation of paragraph 12 of the covenants the court found to be in effect between the parties. We will not address the jurisdictional issues related to declaratory relief because the district court's injunction provided full and effective relief to Appellee and effectively determined the rights of the parties to this action.