# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 125

APRIL TERM, A.D. 2015

September 16, 2015

CARRERA KYLEE COOK f/k/a
CARRERA KYLEE MOORE,

Appellant
(Defendant),

v.

S-15-0057

AUSTIN LEE MOORE,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
Kenneth S. Cohen of Cohen Law Office, P.C., Jackson, Wyoming.

*Representing Appellee:*
Ammon E. Francom and John A. Thomas of John A. Thomas Law Office, Evanston, Wyoming.

*Guardian Ad Litem:*
No appearance.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]    After learning of Mother's imminent relocation nearly 1,400 miles away, Father, Austin Lee Moore, petitioned for custody modification and to transfer primary custody of the parties' child, TM, to him.  Mother, Carrera Kylee Cook (f/k/a Carrera Kylee Moore), opposed the modification, and after a trial on the merits, the district court found that Mother's move constituted a material change in circumstances, and that it was in the best interests of TM for Father to become his primary custodian.  Mother appealed and we affirm.

## *ISSUE*

[¶2]    Was there a material change in circumstances warranting the reopening of the existing custody order?

## *FACTS*

[¶3]    The parties were married April 8, 2011, and divorced on November 13, 2012, in Evanston, Wyoming.  One child resulted from the marriage, TM, born in 2011.  The original custody order awarded the parties joint legal custody of TM, with Mother having primary physical custody.  Father was given liberal visitation, which consisted of every other weekend, alternating holidays, and a graduated summer visitation schedule.  Father also had the option of extending one of his weekend visits every other month to begin Wednesday and end Sunday.  Father regularly exercised his visitation with TM.

[¶4]    Soon after the parties' divorce, Father moved from the marital residence to his parents' home in Evanston, Wyoming, and Mother moved with TM to Layton, Utah, to reside with her parents.  Layton is approximately 75 miles from Evanston.  The proximity of the parties' residences made the exercise of Father's visitation relatively simple.

[¶5]    On October 25, 2013, Mother filed a motion for order to show cause, alleging that Father had denied her visitation when he had custody of TM during the summer, in violation of the custody order.  Father responded, denying that he had violated the custody order, and requesting that the district court modify his child support and some of the visitation provisions.  The parties attempted to resolve their issues by meeting with each other and their respective attorneys.  It was at this meeting that Father learned Mother was planning to marry and move with TM to live with her new husband in College Station, Texas, nearly 1,400 miles from Evanston.  Father then amended his petition to modify, requesting that the district court grant him primary physical custody of TM. Mother opposed the modification, arguing that there had not been a material change in circumstances warranting the reopening of the original custody order, and, in the alternative, that if there was a material change, it would be in TM's best interests for her to retain primary physical custody.

1

[¶6]    A trial was held on May 7, 2014, and the parties submitted closing oral arguments by telephone on June 18, 2014. The district court found that Mother's relocation constituted a material change in circumstances, and that it was in TM's best interests for Father to be awarded primary physical custody. Mother timely filed her notice of appeal.

## STANDARD OF REVIEW

[¶7]                 Decisions affecting child custody rest within the sound discretion of the district court. *CLH v. MMJ (In re TLJ)*, 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo. 2006). We will not disturb the district court's findings "absent procedural error or a clear abuse of discretion." *Id.* (citing *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo. 2004)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Id.* (quoting *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo. 2002)). Our primary goal in reviewing for an abuse of discretion is determining whether the district court's decision is reasonable. *Id.* (citing *Selvey*, 2004 WY 166, ¶ 15, 102 P.3d at 214). "We view the evidence in the light most favorable to the district court's determination, affording to the prevailing party every favorable inference and omitting from our consideration conflicting evidence." *Id.* (citing *Selvey*, 2004 WY 166, ¶ 15, 102 P.3d at 214).

                In custody modification proceedings, the party seeking to modify custody carries the burden of establishing that a material change in circumstances affecting the child's welfare has occurred subsequent to the entry of the initial decree, and that the modification would be in the best interests of the child affected. *Jackson v. Jackson*, 2004 WY 99, ¶ 7, 96 P.3d 21, 24 (Wyo. 2004). "A district court's findings concerning a material change in circumstances is principally a factual determination to which we accord great deference." *Morris v. Morris*, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo. 2007) (quoting *In re TLJ*, 2006 WY 28, ¶ 11, 129 P.3d at 877). "Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did."

2

> *Walker v. Walker*, 2013 WY 132, ¶ 21, 311 P.3d 170, 175
> (Wyo. 2013) (quoting *Hanson v. Belveal*, 2012 WY 98, ¶ 13,
> 280 P.3d 1186, 1192 (Wyo. 2012)).

*Kappen v. Kappen*, 2015 WY 3, ¶¶ 10-11, 341 P.3d 377, 381 (Wyo. 2015).

### *DISCUSSION*

[¶8]   Mother raises only one issue on appeal: whether the district court abused its discretion when it found that her relocation constituted a material change of circumstances warranting the reopening of the original custody order.  In *Arnott v. Arnott*, 2012 WY 167, 293 P.3d 440 (Wyo. 2012), we overruled our precedent holding that relocation by the primary physical custodian, by itself, could not constitute a material change in circumstances.  *Id.* at ¶ 40, 293 P.3d at 458.  Instead, we explicitly recognized that "a relocation by the primary physical custodian, as well as 'factors that are derivative of relocation'—including 'the inherent difficulties that the increase in geographical distance between the parents imposes'—may constitute a material change in circumstances sufficient to warrant consideration of the best interests of the children." *Id.*  In this case, the district court relied on our decision in *Arnott* to find that "Mother's move to Texas constitutes a substantial and material change of circumstances sufficient to warrant consideration of a custodial arrangement that is in the best interests of [TM]." Mother contends that the district court abused its discretion in so finding.[1]

[¶9]   Mother declares that the district court failed to consider the res judicata effect of the original custody order.  We have recognized generally that custody decisions are subject to the doctrine of res judicata; however, "[n]ew issues and facts may create a material change in circumstances, thus mandating a new adjudication of the parties' rights." *Kappen*, 2015 WY 3, ¶ 12, 341 P.3d at 381-82.  The issue of whether there has been a material change in circumstances affecting the welfare of the child is a threshold inquiry which the district court must resolve before it reopens an existing custody order to determine the best interests of the child.  Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2015); *see also Arnott*, 2012 WY 167, ¶ 14, 293 P.3d at 445; *Kappen*, 2015 WY 3, ¶¶ 13-14, 341 P.3d at 382.

[¶10]  In *Arnott*, we recognized that "a move by a custodial parent, especially when the distance from the remaining parent is significant, may create 'new issues framed by facts

---

[1] In addition to the arguments addressed herein, Mother also argues that the district court inappropriately considered her past relationships in determining that there had been a material change in circumstances. However, the district court made abundantly clear in its order that it was finding that only Mother's relocation constituted a material change in circumstances.  It addressed Mother's relationships only when discussing which custody arrangement was in the best interests of TM.  Because Mother did not raise the issue of whether the district court abused its discretion by finding that it was in TM's best interests for Father to have primary physical custody, we need not address Mother's argument on this issue.

differing from those existing when the original decree was entered,' which preclude the application of res judicata." 2012 WY 167, ¶ 39, 293 P.3d at 457-58. We went on to identify some of the "new facts" that may arise as a result of a custodial parent's relocation which would justify a finding of a material change in circumstances, including:

> [A] change in the ability of the parties to maintain the existing parenting agreement, a change in the ability of the children to maintain a close relationship with the remaining parent, factors affecting quality of life in the new location, the child's geographic preference, and the relative merits of available social and educational opportunities in the new location.

*Id.* at ¶ 39, 293 P.3d at 458. Examining these factors, we find that the district court could reasonably have concluded that a material change in circumstances affecting the welfare of TM occurred due to Mother's relocation.

[¶11] Mother argues that the district court abused its discretion when it failed to consider each of the factors set forth in *Arnott*. The *Arnott* factors were intended to provide guidance to district courts regarding some circumstances that it may consider when faced with a modification petition due to the relocation of the custodial parent. *See Arnott*, 2012 WY 167, ¶ 39, 293 P.3d at 458 ("These new facts **may** include . . ." (emphasis added)). While we consider the *Arnott* factors a good framework for district courts to consider when determining whether a relocation creates a material change in circumstances, there is no requirement that they make findings regarding each factor.

[¶12] The district court's order reflects that it considered at least some of the *Arnott* factors, even though it did not explicitly identify them. First, the district court determined that Mother's move "essentially foreclose[d]" the parties' ability to maintain the existing parenting agreement. *Arnott*, 2012 WY 167, ¶ 39, 293 P.3d at 458 (New facts and circumstances warranting reopening of the existing custody order when a custodial parent relocates may include "a change in the ability of the parties to maintain the existing parenting agreement."). The court reasoned:

> [T]here is not time for Father to drive to Texas for weekend visitation, not to mention the additional cost. It is prohibitively expensive for Father to fly for such frequent visitation. In addition, there is the practical difficulty of such weekend visitation in terms of time, since Father cannot reasonably fly to Texas until after work on a Friday, yet must be in Wyoming on Sunday for work on Monday.

Moreover, the district court implicitly recognized that Father's ability to maintain a close relationship with TM would be affected by the move due to a decrease in visitation which

would inevitably occur: "The evidence shows that Father has been able to maintain a close relationship and frequent contact with [TM], in part through regular alternating weekend visitation and alternating long weekends every other month. Mother's move to Texas essentially forecloses that visitation scheme[.]"

[¶13] The parties also presented evidence regarding the relative merits of available social opportunities, though the district court did not discuss this factor in its material change of circumstances analysis. *Arnott*, 2012 WY 167, ¶ 40, 293 P.3d at 458; *Olsen v. Kilpatrick*, 2007 WY 103, ¶ 10, 161 P.3d 504, 507 (Wyo. 2007) ("[T]his Court 'may affirm a district court's decision on any proper legal grounds supported by the record.'") (quoting *Del Rossi v. Doenz*, 912 P.2d 1116, 1119 (Wyo. 1996)). The parties testified that much of their extended family, on both sides, lives in or around Evanston, Wyoming, and Layton, Utah, and TM spends a considerable amount of time with them. The evidence demonstrated that TM's contact with his extended family would significantly be reduced if he moved to Texas.

[¶14] There was scant evidence presented on the remaining *Arnott* factors,[2] which would have made it nearly impossible for the district court to come to any kind of a conclusion regarding those factors had the court attempted that feat. Nevertheless, the factors that the district court was able to consider support its conclusion that Mother's relocation did constitute a material change in circumstances which warranted the reopening of the existing custody order. Thus, Mother's move, as well as the inherent difficulties imposed by the increase in geographical distance between the parents, created new facts and issues not present at the time the original custody order was entered, sufficient to warrant reconsideration of the best interest of TM. *Arnott*, 2012 WY 167, ¶ 40, 293 P.3d at 458.

[¶15] Mother relies heavily on our decision in *Kappen*[3] to establish that her move did not constitute a material change in circumstances. We emphasize our holding in *Arnott*, where "we rejected the application of *any* presumption to the relocation of a custodial parent," *Kappen*, 2015 WY 3, ¶ 18, 341 P.3d at 383, and we reiterate that the custodial parent's geographic move is but one of several factors the district court may weigh. Furthermore, *Kappen* is easily distinguished from the facts and circumstances of this case. In *Kappen*, we found the distance the custodial parent moved did not significantly impact the existing parenting agreement. *Id.* at ¶ 20, 341 P.3d at 383. Mother's relocation, in this case, would require a reworking of the existing parenting agreement because of the expansive geographic distance between the parties. Moreover, TM's relationship with Father would necessarily change due to an increase in the time between Father's visitation with TM.

---

[2] The remaining factors include: "factors affecting quality of life in the new location, the child's geographic preference, and the relative merits of available educational opportunities in the new location." *Arnott*, 2012 WY 167, ¶ 39, 293 P.3d at 458. These factors may not have had particular relevance to a child of this age.

[3] *Kappen* was published after the district court's order was issued.

[¶16]  Mother also contends that the district court erred in light of our decision in *Kappen* because the court focused on how the relocation would affect Father, and failed to consider whether the move constituted a material change affecting the welfare of TM. Indeed, in *Kappen*, we emphasized the need for a district court to consider whether "the change holds some relevance in the child's life." *Kappen*, 2015 WY 3, ¶ 15, 341 P.3d at 382.  While the district court never explicitly found that Mother's relocation would have an effect on TM, the evidence clearly demonstrates that such is the case. *Olsen*, 2007 WY 103, ¶ 10, 161 P.3d at 507.  Primarily, as the district court found, TM would experience a substantial change in the relationship he shares with his Father.  Under the original custody order, TM was able to spend time with Father at least once every two weeks.  With the extensive distance between Evanston, Wyoming, and College Station, Texas, the frequency of those visits would inevitably decrease.  Moreover, TM would experience a reduction in time that he would be able to spend with his extended family. The transition from seeing his extended family almost daily or bi-weekly to holidays or "when [they] can find a time" would undoubtedly impact TM.  The evidence clearly establishes that relocation to College Station, Texas, would affect TM's welfare.

## *CONCLUSION*

[¶17]  The district court determined that Mother's relocation, nearly 1,400 miles from Father, created a material change in circumstances warranting the reopening of the original custody order.  The considerable increase in the geographical distance between the parties created a material change in circumstances affecting the welfare of the child. Because the district court could reasonably conclude as it did, we affirm.

6