# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 139

**OCTOBER TERM, A.D. 2021**

**December 22, 2021**

AUSTIN GUTIERREZ f/k/a AUSTIN
BRADLEY,

Appellant
(Defendant),

v.                                                                    S-21-0079

JEFFREY G. BRADLEY,

Appellee
(Plaintiff).

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*
    H. Michael Bennett of Corthell and King, P.C., Laramie, Wyoming.

*Representing Appellee:*
    No appearance.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice**

[¶1]    Austin Gutierrez (Mother) appeals the district court's child custody modification order awarding Jeffrey G. Bradley (Father) primary physical custody of their two children. Mother contends the court abused its discretion when it determined a material change in circumstances had occurred that warranted reconsideration of the existing child custody order, and when it failed to adequately consider the children's sibling relationships in its best interests analysis.  Father did not file a brief.  We affirm.

## *ISSUES*

[¶2]    We rephrase Mother's issues as:

> I.    Did the district court abuse its discretion by finding a material change in circumstances had occurred that warranted reconsideration of child custody?

> II.    Did the district court abuse its discretion by failing to adequately consider the children's sibling relationships in its best interests analysis?

## *FACTS*

[¶3]    Mother and Father, who married in 2009, share two minor children: QGB born in 2009, and KJB born in 2010.  During the marriage, the parties lived in Laramie, Wyoming. In January 2016, the parties entered into, and the court accepted, a stipulated divorce decree that awarded them joint legal, physical, and residential custody of the children.  They agreed to an alternating two-week visitation schedule structured around Father's work travel.

[¶4]    Shortly after the divorce, Father remarried.  Father and his wife had another child, BB, in 2016.  In 2017, Mother moved to Cheyenne and also remarried.  Mother's husband had one daughter, JG, from a previous relationship, and Mother and her husband had their first child, GG, in 2018.

[¶5]    Mother filed a petition to modify child custody when she moved to Cheyenne.  The court granted Mother's petition in April 2018.  First, it found that her move constituted a material change in circumstances because the alternating two-week visitation schedule became "simply not workable" and "detrimental" to the children.[1]  Then, it determined it

---

[1] After Mother moved to Cheyenne, the two-week visitation schedule meant that, during Mother's visitation, the children were commuting to Laramie from Cheyenne every day for school and extra-

1

was in the children's best interests for the parties to share joint legal custody and for Mother to have primary residential custody[2] subject to Father's liberal visitation.[3]

[¶6]    Father filed the custody modification petition at issue in July 2020.  His petition contended that a material change in circumstances had occurred in that: the children had expressed a desire to live with Father; Father had moved to Evans, Colorado to be closer to work and now was able to be home every night; Mother had created instability in the children's lives by moving three times since the last modification; and Mother had hindered Father's visitation, caused scenes with Father and his wife at school events, and failed to keep Father informed and involved with the children's lives, schooling, and appointments. Father argued that it was in the children's best interests that he be awarded primary residential custody.

[¶7]    In September 2020, Mother's family relocated to Artesia, New Mexico due to her husband's job transfer.  Mother and her husband welcomed another child, SG, sometime thereafter.

[¶8]    The court held a hearing on Father's petition in January 2021.  The children testified first.  QGB discussed the move to New Mexico and expressed a desire for things to be like they were before when his parents lived closer.  Although he had nothing negative to say about life at Mother's, when asked what he liked about being at Father's he answered that they "do a lot more activities" there, they "do more things as a family[,]" and he is "happier there sometimes."  KJB did not state a preference to reside with either parent.

[¶9]    Father testified next.  He expressed some frustrations with Mother's co-parenting since the 2018 custody modification.  Specifically, Mother had moved several times since then and she did not always keep Father informed of those moves.  Father also discussed instances when Mother was inflexible regarding visitation, failed to include him on school forms and thereby made it difficult for him to access information, and did not allow him to help out with the children's medical appointments and needs.  Additionally, Mother and her husband had caused two public scenes by yelling at Father and his wife in front of the children at school events.

---

curriculars.  The court found that "[i]t does not serve the best interests of the children to spend their time in such a manner, sometimes on dangerous roads and in poor weather conditions."

[2] The court found that both parents were competent and fit, both had a solid and loving relationship with the children, both were involved in the children's lives and had demonstrated an ability to care for the children.  It recognized that Mother had had a period of instability that seemed to have been resolved.  It also made clear in its order that Father's rotating two-week work schedule weighed heavily in its decision to award Mother primary residential custody.

[3] During the two-week periods when Father was not working, he was entitled to two weekday visits from 3:00 p.m. to 7:00 p.m., and weekend visits from Friday afternoon through Sunday.  Father was also entitled to summer and holiday visits as outlined in the court's order.

[¶10]   Father was particularly concerned about Mother's latest move to New Mexico and the nine-hour distance it created between him and the children.  Since Mother's move, Father had only seen the children for Thanksgiving and half of Christmas break, and he felt that his communication with them was otherwise strained.  Father wanted to see the children more, and because their schooling in New Mexico was online due to COVID-19, Father asked Mother if they could return to the rotating two-week visitation schedule, but this did not occur.  Father expressed concern for the children because he felt like they were forced to keep information from him regarding Mother and their life at her home.  He feared that, if the current situation continued, KJB would "continue to have a wall [up]" and QGB may begin "to lash out[.]"  Lastly, Father explained that awarding him custody would allow the minor children to foster their relationships with extended family because both Father's and Mother's parents live in Laramie, Wyoming, Father's sister lives in Casper, Wyoming, and his wife's family lives in Greeley and Arvada, Colorado.

[¶11]   Mother testified that she and her husband were renting their house in New Mexico on a six-month lease that they intended to renew for another six months.  Mother explained that the children had a structured routine during the week, and that she was home all day to assist with their online schooling.  Due to COVID-19, the children were not participating in many extracurriculars, but the family attended church together and Mother promoted other types of family activities.  Mother conceded that her move to New Mexico had made visitation harder, and that, at the time of the hearing, Father's visitation primarily consisted of holidays.  However, Mother stated she had never tried to interfere with Father's visitation, and she encouraged the children to call him more.

[¶12]   Mother admitted that she had moved, at least once, within Wyoming, without telling Father, and that she had submitted forms to the children's schools that included contact information for only her and her husband.  But Mother stated these oversights were due to being busy, and that she never intended to interfere with Father's access to school information.  Mother also acknowledged that her actions towards Father and his wife at the two school events were embarrassing and not good examples of co-parenting.  As to the children's well-being, Mother claimed that she mainly saw them happy and excited.

[¶13]   In closing, Father argued that a material change in circumstances had occurred in that Mother had continuously failed to foster a relationship between Father and the children, and Mother had relocated the children to New Mexico. Mother argued that Father had failed to demonstrate a material change in circumstances.  Each party maintained that the children were close to the half- and/or stepsiblings in his or her home and urged the court to consider sibling separation in its best interests analysis.  Mother suggested that the sibling relationships in her home, the children's custodial home, should be considered more important.  Each party asserted it was in the children's best interest for him or her to have primary physical custody.

3

[¶14]  In a February 2021 order, the district court found that Mother's relocation to New Mexico made the existing visitation schedule difficult, if not impossible, and negatively impacted the children's relationship with Father and therefore constituted a material change in circumstances.  The court then determined it was in the children's best interests for the parties to share joint legal custody and for Father to have primary physical custody.  Mother timely appealed.

## STANDARD OF REVIEW

[¶15]  Our standard of review for child custody modification decisions is well established.

> We employ a two-step analysis in determining a request for a change in custody or visitation.  The first step requires a showing of a material change in circumstances since the most recent custody and/or visitation order.  Once that is shown, the court determines whether a change of custody and/or visitation is in the child[ren's] best interests.

*Hays v. Martin*, 2021 WY 107, ¶ 21, 495 P.3d 905, 910 (Wyo. 2021) (quoting *Lemus v. Martinez*, 2021 WY 66, ¶ 17, 486 P.3d 1000, 1007 (Wyo. 2021); *see* Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2021).  "We review a district court's child custody modification ruling for an abuse of discretion." *Hays*, ¶ 21, 495 P.3d at 911 (citing *Rush v. Golkowski*, 2021 WY 27, ¶ 36, 480 P.3d 1174, 1182 (Wyo. 2021)).  "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." *Kimzey v. Kimzey*, 2020 WY 52, ¶ 27, 461 P.3d 1229, 1238 (Wyo. 2020) (quoting *Jacobson v. Kidd*, 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018)).  We evaluate "the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Id.* (quoting *Jacobson*, ¶ 14, 426 P.3d at 820).

## DISCUSSION

### I.     The court did not abuse its discretion by finding a material change in circumstances had occurred that warranted reconsideration of child custody.

[¶16]  Because custody orders are subject to res judicata, the court must find that a material change in circumstances has occurred before it can consider modifying an existing child custody order.  *Id.* ¶ 29, 461 P.3d at 1238 (citing *Bishop v. Bishop*, 2017 WY 130, ¶ 11, 404 P.3d 1170, 1173 (Wyo. 2017)).  To be considered material and thereby justify reopening the order, "the change in circumstances must affect the welfare of the children." *Id.* (quoting *Jacobson*, ¶ 17, 426 P.3d at 821); *see also Ianelli v. Camino*, 2019 WY 67, ¶ 23, 444 P.3d 61, 67 (Wyo. 2019).  The circumstances "may have relevance in [the children's lives] before there are outward signs of harm." *Ianelli*, ¶ 24, 444 P.3d at 67

4

(quoting *Jacobson*, ¶ 19, 426 P.3d at 821). "A district court's finding concerning a material change in circumstances is principally a factual determination to which we accord great deference." *Id.* ¶ 23, 444 P.3d at 67 (citation omitted).

[¶17] Mother argues the district court abused its discretion when it found that her move to New Mexico constituted a material change in circumstances. Though Mother agrees that visitation should have been modified because her move "made the current visitation schedule unworkable," she claims that the circumstances did not warrant a change in custody.

[¶18] In *Arnott v. Arnott* we explained that a custodial parent's relocation "and factors 'derivative' of that relocation may constitute a material change of circumstances." *Kimzey*, ¶ 31, 461 P.3d at 1239 (quoting *Arnott v. Arnott*, 2012 WY 167, ¶ 40, 293 P.3d 440, 458 (Wyo. 2012)); *see also Cook v. Moore*, 2015 WY 125, ¶ 8, 357 P.3d 749, 752 (Wyo. 2015). The *Arnott* factors include:

> [A] change in the ability of the parties to maintain the existing parenting agreement, a change in the ability of the children to maintain a close relationship with the remaining parent, factors affecting quality of life in the new location, the child's geographic preference, and the relative merits of available social and educational opportunities in the new location.

*Cook*, ¶ 10, 357 P.3d at 752 (quoting *Arnott*, ¶ 39, 293 P.3d at 458). These factors are meant to provide guidance regarding circumstances courts may consider when a party claims a material change in circumstances due to the custodial parent's relocation. *Id.* ¶ 11, 357 P.3d at 752. The court need not address every factor or specifically rule on each factor "as long as there is some indication it considered them." *Kimzey*, ¶ 38, 461 P.3d at 1241; *see also Cook*, ¶¶ 11–12, 357 P.3d at 753.

[¶19] The record certainly indicates the district court considered the *Arnott* factors. Examining the circumstances of this case, the court determined that Mother's move to New Mexico "will certainly cause, and has already created, difficulties (if not impossibilities) involving the exercise of current visitation." It also found that the move had negatively impacted the children's relationship with Father, as the parties struggled to maintain visitation given the nine-hour distance between their homes. It recognized that QGB had indicated a preference to live with Father. And it found there was "absolutely no evidence" that the children's lives would "be enhanced economically, emotionally[,] or educationally by the move" to New Mexico.

[¶20] Additionally, the court determined that while Mother's multiple moves decreased stability in the children's lives, Father's stability had increased since he relocated to Colorado to be closer to his job of 10 years. It found that the parties had "suffered from a

5

deterioration in co-parenting and parental communication, particularly with respect to [Mother] failing to foster an open relationship between the minor children and [Father.]" The court observed that, due to the deterioration of parental communication, "[t]he minor children currently feel unable to be open and free about their relationships with both parents, to the point where they express anxiety about disclosing information to the other parent[.]" And it noted that the move to New Mexico had negatively impacted the children's relationships with their extended family, relationships that could be fostered by a primary placement with Father.

[¶21] As to Mother's argument that the district court should have reconsidered only visitation, it fails for the same reasons we have rejected such arguments before. *See Ianelli*, ¶¶ 25–26, 444 P.3d at 67–68; *Booth v. Booth*, 2019 WY 5, ¶ 21, 432 P.3d 902, 909 (Wyo. 2019). We have previously explained that if the court finds a material change in circumstances has occurred, it is then "required to make an independent determination about what, if any, modification is in the children's best interest." *Ianelli*, ¶ 26, 444 P.3d at 67–68 (quoting *Booth*, ¶ 21, 432 P.3d at 909). Thus, when the court finds a material change, it may properly review both custody and visitation to determine whether modification of the existing order is warranted. *Ianelli*, ¶ 26, 444 P.3d at 68.

[¶22] The district court evaluated the evidence, and adequately assessed whether the change in circumstances was material in accordance with our precedent. We are satisfied it did not abuse its discretion in determining that a material change in circumstances had occurred.

## II. The district court adequately considered the children's sibling relationships in its best interests analysis.

[¶23] Once a court has found a material change in circumstances, it must determine what custody arrangement is in the children's best interests. *See Hays*, ¶ 21, 495 P.3d at 910 (citing *Lemus*, ¶ 17, 486 P.3d at 1007). This requires consideration of the factors set forth in Wyo. Stat. Ann. § 20-2-201(a).[4] *Walsh v. Smith*, 2020 WY 25, ¶ 13, 458 P.3d 58, 64

---

[4] "In determining the best interests of the child, the court shall consider, but is not limited to, the following factors":

    (i)     The quality of the relationship each child has with each parent;

    (ii)    The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

    (iii)   The relative competency and fitness of each parent;

    (iv)   Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

    (v)    How the parents and each child can best maintain and strengthen a relationship with each other;

(Wyo. 2020). Separation of siblings is a non-statutory factor courts also must consider, together with other non-statutory factors such as primary caregiver status and a child's custodial preference. *See Ianelli*, ¶ 27, 444 P.3d at 68 (collecting cases). "No single factor is determinative[.]" *Id.* (quoting *Martin v. Hart*, 2018 WY 123, ¶ 21, 429 P.3d 56, 63 (Wyo. 2018)). Rather, the court "must look to the totality of the evidence" to determine what arrangement is in the children's best interests. *Id.* (citation omitted).

[¶24] In regard to sibling separation, "[w]e have consistently acknowledged a strong public policy in favor of preserving sibling relationships and '[k]eeping siblings together in the same household[.]'" *Id.* ¶ 30, 444 P.3d at 69 (quoting *Paden v. Paden*, 2017 WY 118, ¶ 19, 403 P.3d 135, 141 (Wyo. 2017)). This policy is "equally applicable whether the children are full sibling, half[-]sibling, or stepsiblings." *Id.* (quoting *Aragon v. Aragon*, 2005 WY 5, ¶ 26, 104 P.3d 756, 764 (Wyo. 2005)). We have instructed district courts to "articulate the reasons supporting any decision to separate siblings to assure that a 'comprehensive evaluation of all relevant factors occurred' prior to the custody determination." *Id.* (citation omitted). And we have cautioned trial counsel that they cannot remain passive on the issue, they "must assist the trial judge in articulating on the record the relevant factors and their relative weight which, in the lawyer's professional judgment, should act as a foundation for the [] court's exercise of judicial discretion.'" *Id.* (citing *Paden*, ¶ 19, 403 P.3d at 141).

[¶25] Though Mother did not request W.R.C.P. 52(a) findings, *see Walsh*, ¶ 17, 458 P.3d at 65, she now takes issue with the district court's terse analysis regarding the children's sibling relationships. The district court found:

> QGB and KJB have half[-]siblings and/or stepsiblings at both parents' homes. The evidence reflected that QGB and KJB are close to all of their various siblings.

Without citing to authority, Mother argues that because the children had siblings in both households, the court was required to make a more in-depth analysis regarding sibling separation. She also contends that the sibling separation analysis should be focused on the "siblings within the home of the primary caregiver" in order to avoid "separating a familial

---

(vi)     How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii)    The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii)   Geographic distance between the parents' residences;

(ix)     The current physical and mental ability of each parent to care for each child;

(x)      Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2021).

unit[.]" She claims that "to simply disregard the relationships already formed and separate these siblings [is] contrary to the standard of *Aragon*."

[¶26]   The record makes clear that the district court did not disregard the children's sibling relationships in its best interests analysis—it found that close sibling relationships existed at both parent's homes.  Moreover, sibling separation "is just ***one*** of several factors courts consider in determining the primary issue—the best interests of the children." *See Aragon*, ¶ 24, 104 P.3d at 764 (citation omitted).  The court further considered that QGB and KJB had strong relationship with both parents.  In addition, it found that Mother and Father were both competent and fit to parent; each could provide adequate care, was willing to accept all parenting responsibilities, and was able to interact appropriately with the children.

[¶27]   However, the court expressed some reservations about Mother's ability to maintain a relationship with Father and found that Father had been the more accommodating parent. The court also was concerned that Mother seemed to exclude Father from the children's lives, and that Mother had "displayed some lack of judgment in handling family-related situations[.]"  It found that Father was the more stable parent overall.  It also took into consideration QGB's testimony in which he indicated a desire to live with Father.

[¶28]   Weighing all the required factors, the court determined that it was in the children's best interests to award primary physical custody to Father. *See Paden*, ¶ 21, 403 P.3d at 141–42 (concluding that the district court's sibling separation findings, though not extensive, were adequate because when "viewed in conjunction with the district court's findings on the other relevant factors, they provide[d] us with a reasoned explanation for the district court's decision"); *JCLK v. ZHB*, 2015 WY 95, ¶ 19, 353 P.3d 720, 724 (Wyo. 2015) (affirming the district court's custody decision despite a lack of explicit sibling separation findings because "its detailed analysis demonstrate[d] that it carefully considered the [child's best interests], and determined that those interests would be served by awarding primary custody to Father").  The record supports that decision.  The district court did not abuse its discretion.

[¶29]   Affirmed.