# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 66

APRIL TERM, A.D. 2021

May 11, 2021

ARSENIO LEMUS,

Appellant
(Petitioner),

v.

S-20-0161

MERISSA MARTINEZ,

Appellee
(Respondent).

*Appeal from the District Court of Albany County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Sarah J. Manwarren, Relevant Law, Lynchburg, Virginia.

*Guardian ad Litem:*
Jennifer P. Hanft, Laramie, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     These parties are before us for the second time.  After the district court granted primary physical custody of the parties' children to Merissa Martinez (Mother) and ordered Arsenio Lemus (Father) to pay child support, Father filed a petition to modify custody and support.  The district court denied the petition and Father appealed.  He argues the district court violated his due process rights when it denied his request that the guardian ad litem (GAL) testify about Father's accusation of bias.  Father also claims the court abused its discretion by finding insufficient evidence to support a deduction for mortgage interest expense when calculating income for purposes of child support.  Finding no due process violation or abuse of discretion, we affirm.  We deny Mother's request for attorney fees and costs under Rule 10.05 of the Wyoming Rules of Appellate Procedure (W.R.A.P.).

## ISSUES

[¶2]     Three issues are before us:

     1.     Did the district court violate Father's due process rights by denying his request to call the GAL to testify about alleged bias at the hearing on his motion to remove the GAL?

     2.     Did the district court abuse its discretion when it determined Father had not adequately proven mortgage interest expense to justify a deduction when calculating his income for child support?

     3.  Is Mother entitled to her attorney fees and costs under W.R.A.P. 10.05?

## FACTS

[¶3]     Because the procedural history of this case is convoluted, we recite only those facts relevant to this appeal.

[¶4]     Mother and Father never married but have two children together, a son (JAL) and a daughter (AKL) born in 2006 and 2011, respectively.  In November 2016, after Mother and Father's relationship ended, Father filed a petition to establish custody of the children, visitation, and child support.  Upon Father's motion, the district court appointed a GAL for the children.  After a bench trial, the district court awarded Mother primary physical custody of the children, subject to Father's visitation, and ordered Father to pay Mother $2,588 in monthly child support.  Father appealed, arguing the district court abused its discretion in calculating child support and violated his due process rights by imposing time limits at trial.  *See Lemus v. Martinez (Lemus I)*, 2019 WY 52, 441 P.3d 831 (Wyo. 2019).

1

[¶5]   While his appeal was pending and only two months after the district court entered its custody and support order, Father filed a petition to modify custody and support. He alleged a material change in circumstances had arisen since the court's previous custody and support order, namely, AKL had become stranded on a boat while at Seminoe Reservoir and had to be rescued via helicopter ("boating incident"). Father claimed Mother intentionally provided false information to the search and rescue team to conceal AKL's involvement in the incident and failed to inform him of it.

[¶6]   Mother responded to the petition, admitting the boating incident had occurred and she had not immediately notified Father. However, she claimed the boating incident resulted from a sudden change in the weather; AKL was never in danger because she was stranded with adult family members; and Father learned of the boating incident a few days after it occurred. She denied providing false information to the search and rescue team as the information had been provided to the team by her adult cousin, who was with AKL at the time she was rescued.

[¶7]   In a separate response, the GAL (who also served as the GAL in the original custody and support proceedings) claimed Father had not adequately pled a material change in circumstances justifying modification or that a change in custody was in the children's best interests. She requested a $5,000 retainer to investigate the boating incident, explaining:

> Should this matter go to hearing, GAL will need the funds to retain expert testimony from a career firefighter/paramedic/rescue supervisor to present evidence that, given the dynamic weather in Carbon County, Wyoming, *[Mother]'s and [Mother]'s friends/family's responses to the boating incident . . . [were] completely appropriate*.

(Emphasis added).

[¶8]   Soon after receiving the GAL's response to his petition, Father filed a motion requesting her removal and the appointment of a new GAL because the GAL was biased against him. In support of his motion, he pointed to the GAL's request for a retainer "not so that she can investigate the events in an unbiased and objective way to determine whether there has been a . . . material change in circumstances that warrants a modification in the best interests of the children . . . but so she can prove that [Mother] acted appropriately[.]" Father also maintained he had concerns at the time of her appointment that the GAL may lack objectivity because she shares an office with his ex-wife's best friend.[1]   In an affidavit attached to his motion, Father asserted that soon after her

---

[1] Prior to his relationship with Mother, Father was married. He and his ex-wife had four children, all of whom are now adults. According to Father, they had a contentious divorce.

2

appointment, the GAL met with him and told him "she knew all about [him] and that [his] reputation proceeds [him]," which he took to mean she had a negative impression of him. He also expressed concern over the GAL's actions during Mother's deposition, claiming, among other things, the GAL had defended the deposition by objecting to questions posed to Mother and passed a note to Mother's attorney stating, "we might need to end this deposition and seek a protective order." Father later supplemented his motion to remove the GAL with an allegation that after her appointment, the GAL sought to purchase property from Father and he refused to sell it to her. According to Father, the GAL told him there was no conflict. Father claimed he "did not want to displease the GAL by not selling the property to her, but [he] also did not want to agree to sell the property to her and make it seem like [he] was bribing [her] for a good outcome [in the custody litigation]."

[¶9]    The district court held a hearing on Father's motion to remove the GAL. At the hearing, Father testified to his belief the GAL was biased against him. His testimony mirrored the allegations in his motion and the supplement to the motion. He also asked the district court for permission to call the GAL as a witness. The district court denied the request. Father's attorney objected and provided an offer of proof:

> [FATHER'S COUNSEL]:  By way of an offer of proof, I would submit to this Court that how a [GAL] feels about this particular client is important and relevant. If permitted to testify, I believe the evidence would show that this [GAL] has described [Father] as a piece of S.
>
> ****
>
> THE COURT:  So your offer is that he has heard secondhand . . . that he's been called a name by the GAL. So it would be hearsay anyway?
>
> [FATHER'S COUNSEL]: The offer of proof would be that if the [GAL] was permitted to testify, I would lay foundation with respect to e-mails exchanged by the [GAL and Father].
>
> THE COURT:  So in an e-mail she called him a name?
>
> [FATHER'S COUNSEL]:  In an e-mail she defended the name that she called him, yes.
>
> THE COURT:  That's your offer of proof. The testimony, the back and forth about such a thing would be contrary to the interests of the children, and it would disqualify, in almost every case every time something like this arises, a sitting GAL.

3

> Here, even more dangerous because they've come to the conclusion once, and as you've pointed out with your client, he doesn't like the conclusion the GAL came up with.
>
> He didn't appeal on that ground, but he did disagree with it; still does disagree with it.
>
> So I have to be extraordinarily cautious. I do not find the circumstances or the offer, such that it justifies testimony from the GAL.

[¶10]  The district court denied Father's motion to remove the GAL, finding "[o]ther than a few examples of deposition behavior, and the result the GAL supported, this evidence does not establish inappropriate conduct or bias relating to the decision-making process." It decided a change of GAL "at this juncture is contrary to the interests of the children [and] would result in substantial additional costs to the parties."

[¶11]  We issued *Lemus I* on May 17, 2019. Relevant here, we decided the district court abused its discretion by ordering child support without obtaining sufficient information about Father's income, using conflicting evidence to arrive at his monthly income, and not determining whether Father's deductions for business expenses were appropriate under the statutory definition of income. *Lemus I*, ¶ 33, 441 P.3d at 839. We noted the GAL had reported, and Father's testimony had confirmed, he had at least three businesses, yet the record contained no documentation of Father's income from two of those businesses. *Id.* We remanded to the district court for additional proceedings to determine Father's income. *Id.* We "reiterate[d] that Father [would] have the burden of proving he is entitled to deductions for reasonable unreimbursed legitimate business expenses." *Id.* (citing *Bagley v. Bagley*, 2013 WY 126, ¶ 18, 311 P.3d 141, 1446-47 (Wyo. 2013)).

[¶12]  On remand, the parties filed their confidential financial affidavits (CFA). Father filed a total of three CFAs, each reporting a different net monthly income from three businesses—Laramie Valley Contracting, Arsenio Lemus Holdings, LLC, and Opportunity Knocks, LCC. The income reported for the latter two businesses included rental income from various properties. In his first CFA, Father subtracted unreimbursed business expenses in various amounts in calculating his income. He failed, however, to provide his tax returns or any receipts, verified income and expense statements, or other financial records supporting the legitimacy or reasonableness of the claimed expenses. The GAL moved for a court order requiring Father to supplement or amend his CFA with these financial records.

[¶13]  Before the court ruled on the GAL's motion, Father filed his second CFA and attached his 2017 and 2018 tax returns. Neither tax return was signed. In these returns, he deducted $2,000 in interest for Laramie Valley Contracting and $121,568 in mortgage interest for Arsenio Lemus Holdings. The GAL filed a new motion requesting the court order Father to produce the annual 1098 tax forms associated with the interest deduction.

4

In response, Father filed his third CFA. He attached signed 2017 and 2018 tax returns which differed from the unsigned returns. Relevant here, the mortgage interest deduction claimed on his 2018 tax return for Arsenio Lemus Holdings was now $130,479. He did not provide any Form 1098s documenting this interest. Instead, he filed typed documents from his bank showing amounts he claimed were mortgage interest expenses. The documents did not bear his name and did not identify the mortgaged property, but contained handwritten addresses.

[¶14] The district court held a trial on Father's petition to modify child custody and support. At trial, Mother's attorney asked Father about the interest statements and his failure to provide the Form 1098s. Father claimed the 1098s were lost and could not be located. As a result, he alleged he contacted the bank presidents, who provided the interest statements. According to Father, those statements, while they do not "directly say 1098 on them, . . . they're exactly the same information." He claimed the statements were in the "only format the banks could provide us" and the format did not include his name or the addresses of the properties to which they applied. As a result, Father handwrote the addresses on them.

[¶15] The district court denied the petition to modify custody because there had been no material change in circumstances since entry of its original custody and support order. It also re-calculated monthly child support. It decided Father had not demonstrated he was entitled to the mortgage interest deduction. It found "incredible" his claim that neither he nor his accountant had "the usually recognized mortgage interest information in a tax form known by its number as a 1098" and decided his proof concerning the mortgage interest to be "inadequate and less than credible." As a result, the district court determined Father's monthly income from each of his three businesses as follows: $13,264.98 for Laramie Valley Contracting after adding back in $2,000 in mortgage interest; $10,963.12 for Arsenio Lemus Holdings, LLC, after adding back in $121,568.00 in mortgage interest; and $177.66 for Opportunity Knocks.[2] After deducting amounts for the children's health insurance and his federal taxes, *see* Wyo. Stat. Ann. § 20-2-303(a)(iii) (LexisNexis 2019), the court calculated Father's net monthly income as $23,240.71 and the parties' combined net income as $24,946.70, resulting in a monthly child support obligation of $3,582.44, with Father's share being $3,337.45. The district court also held Father in contempt and

---

[2] It appears the court used the interest amounts from Father's second CFA. We can only speculate, however, because Father's second CFA is not included in the record on appeal, even though Mother cites to it in her brief. We have garnered what information we could concerning Father's second CFA from the trial transcript, the district court's order denying Father's petition to modify custody and support, and the GAL's motions in the district court. In any event, Mother does not complain the court erred in calculating Father's monthly income.

We also note here another discrepancy in the record. The district court's order in the record is missing page 12. As a result, we have relied on the order attached to Father's opening brief for the missing page.

ordered him to pay Mother's attorney fees for, *inter alia*, failing to comply with the court's orders and discovery rules relating to evidence of his income.

[¶16] Father again appealed. He argues the district court denied him due process by denying his request to call the GAL to testify at the hearing on his motion to have her removed and abused its discretion by rejecting deduction of mortgage interest in calculating his income for purposes of determining child support.

## DISCUSSION

### 1. Due Process

[¶17] Father argues the district court violated his due process rights by not allowing him to call the GAL to testify at the hearing on his motion seeking her removal. According to him, the role of a GAL is to represent the minor children and help the court determine the children's best interests. He claims a GAL cannot properly fulfill this role if her recommendation is tainted by bias or personal prejudices. He maintains he established a prima facie case the GAL was prejudiced against him and, as a result, he should have been allowed to call her to testify at the hearing concerning that bias. Mother contends the district court did not err by denying Father's request to call the GAL to testify but, even if it did, he was not prejudiced because the GAL's participation in the proceedings played no role in the outcome of the modification proceedings. She agrees the GAL's role is to assist the district court in determining the children's best interests. However, she asserts Father was not prejudiced by the district court's refusal to allow the GAL to testify because the court denied Father's petition for failure to show a material change in circumstances, so it never reached the best interests issue. Before addressing Father's due process argument, we briefly address Mother's prejudice argument.

> We employ a two-step analysis in determining a request for a change in custody or visitation. The first step requires a showing of a material change in circumstances since the most recent custody and/or visitation order. Once that is shown, the court determines whether a change of custody and/or visitation is in the children's best interests.

*Kidd v. Jacobson*, 2020 WY 64, ¶ 14, 463 P.3d 795, 798-99 (Wyo. 2020) (internal citations omitted).

[¶18] As we explain below, a GAL's primary role in a custody dispute is to advocate for the children's best interests (the second step). Nevertheless, a GAL also plays a role in the first step because a change in circumstances will be considered material "only if it affects the welfare of the children." *Johnson v. Clifford*, 2018 WY 59, ¶ 11, 418 P.3d 819, 823

6

(Wyo. 2018) (citing *Hanson v. Belveal*, 2012 WY 98, ¶ 34, 280 P.3d 1186, 1197 (Wyo. 2012), and *Morris v. Morris*, 2007 WY 174, ¶ 6, 170 P.3d 86, 89 (Wyo. 2007)). Indeed, the change in circumstances must affect the welfare of the children to such a degree that it "outweigh[s] society's interest in applying the doctrine of res judicata" to the original child custody order. *Booth v. Booth*, 2019 WY 5, ¶ 20, 432 P.3d 902, 909 (Wyo. 2019) (quotations omitted) (concluding the record supported the district court's decision that a material change in circumstances negatively affecting the children's best interests had occurred justifying a change in custody).[3]

[¶19] That was true in this case. In its order denying Father's petition to modify custody and support, the district court determined Father's allegations did not constitute a material change in circumstances affecting the children's welfare. For example, the court found Father had failed to provide evidence showing how Mother's parenting and personal life "amounted to any changes or operated to the detriment of the children." With respect to Father's claim Mother had refused his requests for extra time with the children, it found "no change in circumstances or any untoward damage to the children has occurred due to the visitation schedule."

[¶20] While we disagree with Mother's prejudice argument, we nevertheless conclude Father has failed to establish a due process violation. The government may not deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V; XIV § 1. *See also,* Wyo. Const. Art. 1, § 6. To establish a due process violation, Father must demonstrate "'both that he has a protected interest and that such interest has been affected in an impermissible way.'" *Brush v. Davis*, 2013 WY 161, ¶ 16, 315 P.3d 648, 653 (Wyo. 2013) (quoting *PRG v. State, Dep't of Family Servs. (In re KMO)*, 2012 WY 100, ¶ 30, 280 P.3d 1216, 1224 (Wyo. 2012)) (other citations omitted). We review de novo whether an individual was afforded due process. *Matter of NRAE*, 2020 WY 121, ¶ 12, 472 P.3d 374, 377 (Wyo. 2020) (citations omitted).

[¶21] Father is correct that child custody decisions implicate a parent's fundamental right to associate with his or her children. *Lemus I*, ¶ 41, 441 P.3d at 840 (citing *Arnott v. Arnott*, 2012 WY 167, ¶ 30, 293 P.3d 440, 454 (Wyo. 2012)). *See also, RA v. State (In re AA),* 2021 WY 18, ¶ 11, 479 P.3d 1252, 1256 (Wyo. 2021) ("The right of familial association is fundamental.") (citing *Clark v. Dep't of Family Servs. (In re GGMC),* 2020 WY 50, ¶ 22, 460 P.3d 1138, 1145 (Wyo. 2020), *JLW v. CAB (In re WDW)*, 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo. 2010), and *TF v. State, Dep't of Family Servs. (In re Adoption of CF),* 2005 WY 118, ¶ 26, 120 P.3d 992, 1002 (Wyo. 2005)). However, as we said in *Lemus I*, Father "must demonstrate . . . the district court's actions, if inappropriate, impacted his fundamental rights." *Lemus I*, ¶ 42, 441 P.3d at 840-41. In this case, as in *Lemus I*, "[i]t is hard to see how the [district court's refusal to allow Father to call the GAL to testify

---

[3] The GAL was incorrect when she told the district court during closing argument: "[I]t's not my job to address whether a [material] change of circumstances has occurred."

concerning her bias] impacted his fundamental right to associate with his children when he does not even argue . . . the [denial of his petition to modify custody and support] was erroneous." *Id.*, ¶ 42, 441 P.3d at 840-41. In any event, the correct inquiry is not whether Father has a fundamental right to associate with his children but whether he has a protected right to a GAL who is unbiased against him. The answer is no. Father cites no cases, and we have found none, holding a parent has a constitutional right to a neutral and unbiased GAL.

[¶22]  Father relies on *Clark v. Alexander*, 953 P.2d 145 (Wyo. 1998), for the proposition that "the obligations of a GAL cannot be performed with any sort of bias or personal prejudices" and the GAL "must treat[] each parent equally." He cites the following passage from *Clark*:

> [I]n custody matters, the [GAL] has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client. * * * In essence, the [GAL] role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a [GAL], the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the ex parte and other restrictions that prevent the court from conducting its own investigation of the facts, the [GAL] essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the "best interests of the child." Although the child's preferences may, and often should, be considered by the [GAL] in performing this traditional role, such preferences are but one fact to be investigated and are not considered binding on the [GAL]. * * * Thus, the obligations of a [GAL] necessarily impose a higher degree of objectivity on a [GAL] than is imposed on an attorney for an adult.*

*Id*. at 152 (emphasis added).

[¶23]  Father takes this passage out of context. In *Clark*, the issue was whether it was proper for the GAL, who was also actively participating as the minor children's attorney, to testify as a fact witness even though Wyoming Rule of Professional Conduct 3.7 generally prohibits an attorney from acting as an "advocate at a trial in which the lawyer is likely to be a necessary witness." *Clark*, 953 P.2d at 148. In answering this issue, we

8

recognized the dual roles of an individual who serves as both the GAL and the child's attorney. *Id*. at 151-52. On the one hand, as the GAL, the individual must advocate for the child's best interests, including recommending to the court the outcome the GAL believes to be in the child's best interests. *Id*. at 152. On the other hand, as an attorney, the individual must abide by the rules of professional conduct, including maintaining the client/child's confidentiality and abiding by the client/child's decisions concerning the objectives of representation. *Id*. at 152-53. We noted these roles often conflict. *Id*. For example, the child's best interests may not coincide with the child's custody preference. *Id.* at 152. Due to these conflicting roles, some jurisdictions require both a GAL and an attorney to be appointed for the child. *Id.* at 153. We decided "the costs attending the appointment of both an attorney and a [GAL] would often be prohibitive and would in every case conscript family resources better directed to the child[]'s needs outside the litigation process." *Id.* As a result, we declared the role of the GAL to be a "hybrid," necessitating a modified application of some of the rules of professional conduct. *Id.* However, we concluded no modification was needed to Rule 3.7:

> Our holding in *Moore [v. Moore],* 809 P.2d 261 [(Wyo. 1991),] clearly mandates that the attorney/[GAL] is to be an advocate for the best interests of the child and actively participate at the proceedings. As counsel, the attorney/[GAL] has the opportunity and the obligation to conduct all necessary pretrial preparation and present all relevant information through the evidence offered at trial. Recommendations can be made to the court through closing argument based on the evidence received. It is, therefore, unnecessary to allow the attorney/[GAL] to place his or her own credibility at issue. Consequently, we join those jurisdictions which hold that an attorney/[GAL] may not be a fact witness at a custody hearing.

*Id.* at 154.

[¶24]  *Clark* does not require a GAL to remain neutral and unbiased to <u>the parents</u>. Rather, it addresses a GAL's responsibilities to <u>the child</u>. It makes clear a GAL does not act as an objective decision maker but rather as an advocate for the child's best interests. *Clark,* 953 P.2d at 154 ("[T]he attorney/[GAL] is to be an advocate for the best interests of the child and actively participate at the proceedings."); *Matter of GAC*, 2017 WY 65, ¶ 19, 396 P.3d 411, 416 (Wyo. 2017) ("In *Moore*, 809 P.2d at 264, we stated . . . the [GAL] is the attorney for the minor whom he is appointed to serve and participates in the proceedings as an advocate. We expanded upon the *Moore* ruling in *Clark* and explained that the [GAL] performs dual roles, by acting in the child's best interest and as an advocate in his favor.") (internal quotation marks omitted). The Wyoming Rules of Professional Conduct also bear this out. *See, e.g.*, Wyo. R. Prof. Cond. 1.2(e) ("When a lawyer is appointed to act as a [GAL], the lawyer *shall represent what he or she reasonably believes to be in the best*

*interests of the individual*.  The lawyer shall not, therefore, be bound by the individual's objectives for the representation . . . .") (emphasis added); Wyo. R. Prof. Cond. 1.4 ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation, *except that a lawyer appointed to act as a [GAL] shall be ultimately responsible for making decisions in the best interests of the individual*.") (emphasis added).

[¶25]   As we explained in *Pace v. Pace,* 2001 WY 43, ¶ 26, 22 P.3d 861, 870 (Wyo. 2001):

> A [GAL], counsel, and the court should work together at the beginning of a case to develop and articulate clearly the scope and nature of the [GAL]'s responsibilities.  Full investigations of the facts relevant to custody should be completed by the [GAL], including interviewing witnesses deemed appropriate by the [GAL], custody evaluators, if any, counselors, teachers, relatives, and friends.  Based on the evidence, input from any experts, and their own best judgment, the [GALs] will develop their recommendations concerning custody.  They should communicate with the parents' counsel, preferably in writing, regarding the proposed recommendations sufficiently in advance of trial to allow them to prepare evidence in response to the recommendations.  If the parties agree, those recommendations should be provided to the court prior to trial.  To fulfill their obligations to the children they represent, [GALs] must take the necessary steps to assure sufficient evidence is presented at trial either by introducing the evidence themselves or assuring counsel for one or both parents are prepared to do so.  Finally, [GALs] should present their recommendations to the court in the form of closing argument and not through personal testimony. We recognize fully that often [GALs] are not handsomely compensated for their work.  However, performing these outlined duties is required to fulfill their professional responsibility.

[¶26]   In granting Father's initial request for the appointment of a GAL, the district court clearly articulated the scope and nature of the GAL's duties.  It found there were disputed issues concerning the children's best interests, including "a high level of acrimony between [Mother and Father]" and allegations of "[a]buse or neglect," "[i]llegal or excessive drug or alcohol abuse by a party," "family violence," "mental health problems," "[s]pecial physical, educational, or mental needs," and "[i]nappropriate adult influence or manipulation."  It determined appointment of a GAL was "appropriate and necessary *to represent the children's best interests with regard to these issues*." (Emphasis added).  It authorized the GAL to act as an attorney of record with notice of all pleadings and settings;

to fully investigate the issues relating to the children's best interests; to participate in discovery, file pleadings, and attend all hearings; and to "develop and present relevant evidence related to the children's best interests to the Court at trial."

[¶27] The GAL fulfilled these responsibilities, both in the initial custody and support proceedings and during the proceedings to modify custody and support. She conducted investigations, participated in discovery, filed pleadings, attended all hearings, cross-examined the witnesses at trial, and sought to have Father correct his inadequate financial disclosures to determine the proper support for the children. After hearing the evidence at both trials, she advocated for the result she believed to be in the children's best interests. Not surprisingly, in fulfilling her role as an advocate for the children's best interests, the GAL acted adversely to one of the parent's wishes, in this case Father's. However, this is true in almost every child custody matter—one party "wins," the other "loses." But it was the district court, not the GAL, which ultimately determined custody in the children's best interests. If Father was dissatisfied with the district court's decision to award Mother primary physical custody, his remedy was to appeal that decision. He did not. *See Lemus I*, ¶ 42, 441 P.3d at 840 ("Father does not contest the district court's custody determination.").

[¶28] Because a GAL acts in the child's best interests, a district court may remove a GAL only for circumstances adverse to the child. *See* 43 C.J.S., *Infants*, § 438 ("The court has the power to remove, or revoke the authority of, a [GAL] or next friend for sufficient cause. The court must remove, or revoke, the authority of the representative when the circumstances require it. In particular, the court has a duty to remove the representative *when the removal is necessary to protect the interests of the infant*.") (emphasis added). Father presented no evidence the GAL was acting adversely to the children or their best interests. Rather, he sought to remove the GAL because she was biased toward him. Similarly, in his offer of proof in response to the district court's refusal to allow him to call the GAL to testify, Father alleged the GAL would have testified concerning e-mails between them in which she defended calling him a name. Again, this testimony would have shown only that the GAL apparently had evaluated the facts against him, not that the GAL was acting adversely to the children or their best interests.

[¶29] It is appropriate for a GAL to continue in a case after the trial court makes an initial custody determination and a parent claims custody or visitation should be changed. At that point the GAL knows the history of the case, knows the children, and likely reached conclusions for or against one parent, based on the best interests of the children. Father claims such a GAL cannot continue because his or her conclusions constitute a bias. In doing so, Father confuses his protected rights with the rights of his children. He provides no authority for his claim that the GAL cannot continue in the case, nor does he provide any logical argument to support it.

11

[¶30]   Because he had no protected right to a GAL unbiased against him, the district court did not violate Father's due process rights by denying his request to call the GAL to testify at the hearing seeking her removal.

## 2. *Child Support/Mortgage Interest*

[¶31]   Father argues the district court abused its discretion when it found his proof of mortgage interest expenses inadequate.  He maintains the mortgage interest he pays on his multiple rental properties is a legitimate business expense.  He claims he supported the claimed mortgage interest deduction with the interest statements from the bank and testified to their legitimacy, which was not contradicted.

[¶32]   As we explained in *Lemus I*:

> We review the district court's order on child support by applying the abuse of discretion standard.
>
>> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances.  Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.  Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained.

*Lemus I*, ¶ 18, 441 P.3d at 835 (quoting *Stevens v. Stevens*, 2014 WY 23, ¶ 8, 318 P.3d 802, 806 (Wyo. 2014), and *Bingham v. Bingham*, 2007 WY 145, ¶ 10, 167 P.3d 14, 17-18 (Wyo. 2007)) (internal citations omitted).

[¶33]   "Child support calculations are governed by . . . Wyo. Stat. Ann. §§ 20-2-301 through -308 [(LexisNexis 2019)] . . . .  The first step in calculating child support is to determine each parent's monthly income and net monthly income." *Marquis v. Marquis*, 2020 WY 141, ¶ 21, 476 P.3d 212, 218 (Wyo. 2020) (citations omitted).  Section 20-2-303(a)(ii) provides in relevant part: "In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted."

[¶34]   The district court correctly found mortgage interest could be deducted as a "reasonable unreimbursed legitimate business expense" in determining Father's income.

12

*See Fleenor v. Fleenor*, 992 P.2d 1065, 1069 (Wyo. 1999). It decided, however, Father had not satisfied his burden to show he is entitled to the mortgage interest deduction. We see no abuse of discretion in that decision.

[¶35] Father did not provide the customary Form 1098s documenting the mortgage interest he claimed. While he testified the 1098s had been lost and could not be located or reproduced, the district court found this explanation to be "incredible." We give "due regard" to this credibility determination. *See Mattheis Co. v. Town of Jackson*, 2019 WY 78, ¶ 18, 444 P.3d 1268, 1275 (Wyo. 2019) (upon review of a district court's decision following a bench trial, "'[d]ue regard is given to the opportunity of the trial judge to assess the credibility of the witnesses . . . [;] [f]indings of fact will not be set aside unless they are clearly erroneous'" (quoting *Meiners v. Meiners*, 2019 WY 39, ¶ 8, 438 P.3d 1260, 1265-66 (Wyo. 2019)).

[¶36] The district court's credibility determination is supported by the record. Father's accountant testified he relied on the interest statements, rather than the Form 1098s, in preparing Father's tax returns. However, he also testified he had never experienced a situation in his over twenty-year career as an accountant where a bank could not reprint a lost 1098. It also appears Father's accountant had information concerning the mortgage interest which was not provided to the court. The accountant testified he received from Father a printout of "the ending interest paid" and "the balance" of the mortgages. He also testified Father provided him "proof of [his] expenses" in "a satchel . . . with tape around all of them" and the accountant "looked at all those and matched them up with what [he had]." While the nature and quality of the information in the printout and satchel is unknown, Father did not provide either to the court.

[¶37] The court found the interest statements Father provided were "inadequate" to meet his burden of proof. Again, the district court's decision is supported by the record. The interest statements do not contain Father's name, and Father handwrote the property addresses to which they allegedly apply on the statements. Father's claim there was no contradictory evidence as to the legitimacy of the statements misstates the burden of proof. Father had the burden to prove his entitlement to the mortgage interest deduction. Mother and the GAL had no obligation to provide contradictory evidence. In any event, Mother elicited from Father's accountant testimony concerning his experience with lost 1098s, and this testimony discounted Father's testimony that lost 1098s cannot be reproduced.

[¶38] The district court did not abuse its discretion by not allowing Father to deduct mortgage interest to determine his income for purposes of calculating child support.

### 3. W.R.A.P. 10.05

[¶39] Mother argues she is entitled to her attorney fees and costs on appeal under W.R.A.P. 10.05 because Father had no reasonable cause to bring this appeal and his appeal

13

lacks cogent argument. She claims he failed to acknowledge the GAL played no role in the district court's finding that no material change in circumstances had occurred since the original custody and support order, and he had again provided improper evidentiary support for his unreimbursed business expenses. She admits he provides pertinent legal authority in his brief but claims he relies on out-of-state cases with little Wyoming authority. She also asks us to consider the district court held Father in contempt for willfully violating its orders concerning child support and discovery. According to Mother, Father is "attempting to wage a war of attrition, which will never end unless [he] continues to bear the cost, which justifies an award of fees pursuant to W.R.A.P. 10.05."

[¶40] Rule 10.05(b) states: "If the court certifies . . . there was no reasonable cause for the appeal, a reasonable amount of attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." "Rule 10.05 sanctions 'are generally not available for challenges to discretionary rulings, unless an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Fleet v. Guyette*, 2020 WY 78, ¶ 66, 466 P.3d 812, 828 (Wyo. 2020) (quoting *Deede v. Deede*, 2018 WY 92, ¶ 10, 423 P.3d 940, 943 (Wyo. 2018)) (other citation and quotation marks omitted).

[¶41] We recognize Mother's frustration with the course of these proceedings and Father's litigious behavior. As the district court pointed out in its order denying Father's petition to modify custody and support, it is obvious the parties "do not like each other." Our standard for awarding fees on appeal, however, does not depend on a party's likeability. Rather, we look to the reasonableness of the appeal and the quality of the arguments, legal authority, and record citations provided. Considering these factors, we deny Mother's request for her fees and costs.

[¶42] Father presented some cogent argument concerning the issues he raised and cited to pertinent legal authority (including many Wyoming cases) and the relevant portions of the record. Indeed, we agreed with his argument and rejected Mother's argument concerning the GAL's role with respect to whether there has been a material change in circumstances justifying a change in custody. The fact he has lost his appeal is not determinative. *See, e.g., Marquis*, ¶ 52, 476 P.3d at 224 (even though Father's appellate arguments were not persuasive, we could not "certify that he had no reasonable cause for his appeal"); *Carbaugh v. Nichols*, 2014 WY 2, ¶ 24, 315 P.3d 1175, 1180 (Wyo. 2014) (same). Moreover, while we agree Father was derelict in providing timely and sufficient information supporting his unreimbursed business expenses, the district court sanctioned Father for this conduct by ordering him to pay Mother's district court attorney fees, and his failure to provide sufficient evidence supporting the mortgage interest has resulted in him not being allowed to deduct it. We also do not generally award fees in an appeal challenging discretionary rulings. *See Fleet*, ¶ 66, 466 P.3d at 828 (quoting *Deede*, ¶ 10, 423 P.3d at 943). The district court's decision that Father had not adequately proven the

14

mortgage interest expense for purposes of calculating child support was a discretionary ruling.

[¶43] Mother relies on *Fleet* and *Golden v. Guion* in support of her claim for fees and costs. These cases are distinguishable. In *Fleet*, Father failed to support many of his appellate arguments with cogent argument or citation to legal authority and the record. *Fleet*, ¶¶ 18, 20, 55, 65, 67, 466 P.3d at 819-20, 826, 828. In *Golden*, one of the wife's appellate arguments was a reiteration of an argument that had resulted in her being sanctioned by the district court. *Golden v. Guion*, 2016 WY 54, ¶ 33, 375 P.3d 719, 727 (Wyo. 2016). Her briefs also failed to comply with the rules of appellate procedure. *Id*. In this case, Father's arguments, while ultimately unpersuasive, were supported by legal authority and adequate citations to the record, and his briefs complied with our procedural rules.

## CONCLUSION

[¶44] The district court did not violate Father's due process rights by denying his request to call the GAL to testify as to her bias or abuse its discretion by refusing to deduct mortgage interest to determine his income for purposes of calculating child support.

[¶45] We affirm. We deny Mother's request for her appellate attorney fees and costs under Rule 10.05.