# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 107

APRIL TERM, A.D. 2021

October 1, 2021

KAREN DM HAYS,

Appellant
(Plaintiff),

v.

S-21-0040

TERRANCE R. MARTIN,

Appellee
(Defendant).

*Appeal from the District Court of Fremont County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
Patricia L. Bennett of Bennett Law Group, PC, Laramie, Wyoming.

*Representing Appellee:*
Katherine A. Strike of Stanbury & Strike, PC, Lander, Wyoming.

*Guardian ad Litem:*
Margaret P. Miller, Lander, Wyoming.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Karen DM Hays (Mother) appeals the district court's child custody modification order awarding Terrance R. Martin (Father) primary physical custody of their son HRM. Mother claims the district court abused its discretion when it denied her motion to remove the guardian ad litem (GAL) and when it failed to adequately consider her abuse allegations against Father.  Father and the GAL both argue that the district court acted appropriately. We affirm.

## *ISSUES*

[¶2]    The issues are:

> I. Did the district court abuse its discretion when it denied Mother's request to remove the GAL?
>
> II. Did the district court abuse its discretion by failing to adequately consider Mother's abuse allegations when it modified custody?

## *FACTS*

[¶3]    HRM was born to Mother and Father in May 2013.  Mother and Father married in December 2013, and Mother filed for divorce in August 2015.  Mother got a protection order against Father in May 2016, after alleging he physically and mentally abused her, HRM, and her older son KDH.  The district court appointed a GAL to investigate Mother's claims and represent HRM's best interests during the divorce proceedings.  The court issued a divorce decree in September 2017 that approved and incorporated the parties' custody agreement.  It awarded the parties joint legal custody of HRM, gave Mother primary physical custody, and ordered them to split parenting time evenly—with HRM rotating between their homes on a weekly basis.

[¶4]    This dispute began in September 2018, when Mother filed a petition to modify custody and an emergency motion for temporary custody based on new abuse allegations. Mother attached her 2016 protection order, a 2018 protection order, and a seven-page affidavit detailing Father's alleged abuse.  Her affidavit made a few general references to child abuse without providing context, then focused mainly on an incident that occurred between Mother and Father around 1:00 a.m. on August 24, 2018.  Mother claimed she went to Father's house to confront him about approaching HRM at a public concert earlier that day during her visitation week.  She said that when she arrived, Father attacked her, yelled at her, and pushed her into a porch railing.  Mother then began denying Father contact with HRM in early September.

1

[¶5]    In response, Father filed a motion to enforce the existing custody and visitation schedule and counterclaimed for custody modification, requesting primary legal and physical custody of HRM.  Father attached an affidavit detailing his account of the August 24 incident.  He claimed that after Mother burst inside his house at 1:00 a.m., he "placed [his] hands on her shoulders and directed her back outside" then locked his door.  He further claimed he never touched Mother in a rude or hostile manner, Mother willfully interfered with his relationship with HRM, and Mother purposely tried to defame him.

[¶6]    The GAL also filed a motion to enforce the existing custody and visitation schedule pending the modification proceedings.  Citing her earlier investigation, she explained that Mother previously prevented visitation between HRM and Father during the divorce proceedings based on abuse allegations that were found to be baseless.  She feared that Mother was engaging in "parental alienation" and expressed her opinion that HRM "loves and needs BOTH of his parents[.]"

[¶7]    Mother then moved the court to remove and replace the GAL.  She claimed the GAL filed her motion to enforce visitation without investigating the new abuse allegations and argued that doing so was indicative of the GAL's bias against Mother.

[¶8]    The district court held a hearing on the motions in December 2018.  The court first heard testimony and arguments regarding Mother's motion to remove the GAL.  Mother called three friends who testified that, based on their respective interactions with the GAL, they felt the GAL was aggressive, protective of Father, negative toward Mother, and not focused on what was best for HRM.  Neither Father nor the GAL called any witnesses.  The court decided to reserve its ruling on Mother's motion and allow the GAL to participate in the modification proceedings.

[¶9]    The court then took up the issue of temporary custody and visitation.  It heard testimony from numerous witnesses, including Mother and Father, about the nature of Mother and Father's relationship and interactions with one another; each party's relationship with HRM and KDH—including specific incidents of alleged abuse; and the events leading up to and following the August 24 incident.  At the close of the hearing, the court ordered the parties to resume visitation as outlined in its ruling until the custody modification trial.

[¶10]  The custody modification trial took place in January 2020.  Mother and Father each testified that they love HRM and that he is a good kid who likes various activities, including fishing and 4-H.  Each parent said HRM had his own room in their home; neither consumed alcohol around HRM; and each said they could provide healthy structure, discipline, and meals.  Mother also testified that HRM has a great relationship with KDH.  Both testified that they believe the other is a good parent.  However, Father expressed concern that Mother allowed HRM to bike on busy roads, and that HRM missed a lot of school when in Mother's care.

2

[¶11]   Mother and Father each requested primary custody of HRM.  Both testified they communicated with each other mostly by text message because Mother's protection order was still in place.[1]  Father admitted that this made co-parenting difficult.  Mother testified that the 50/50 custody arrangement was not in HRM's best interests and that he needed a more structured schedule.  Mother's testimony showed her income was somewhat unstable, she had several businesses, including a restaurant and a food truck, but her current monthly income was $0.  Father testified he was an attorney with over 20 years of experience, and his current monthly income was about $4,000.  The parties and the GAL filed written closing arguments.  In her closing, the GAL recommended a primary placement with Father.

[¶12]   The district court issued its decision letter and order in Summer 2020.  After thoroughly summarizing the testimony from the 2018 hearing and 2020 trial, it granted the parties joint legal custody of HRM and awarded Father primary physical custody.  The court then denied Mother's motion to remove the GAL, finding that the GAL "was doing her job as she always does it" and that she had a "justified reason for proceeding as she did[.]"  Mother timely appealed.

## *DISCUSSION*

### I.      *The district court did not abuse its discretion by refusing to remove the GAL.*

[¶13]   We review a district court's ruling on a motion to remove a GAL for abuse of discretion.  "A district court does not abuse its discretion if it could reasonably conclude as it did."  *Castellow v. Pettengill*, 2021 WY 88, ¶ 7, 492 P.3d 894, 897 (Wyo. 2021) (quoting *Sears v. Sears*, 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021)).

[¶14]   Mother's argument that the district court abused its discretion when it denied her motion to remove the GAL is two-fold.  She first takes issue with the court allowing the GAL to participate in the modification proceedings even though the GAL did not investigate her 2018 abuse allegations.  She also claims the GAL was biased against her, and that this bias was clearly evidenced by the GAL's behavior throughout the proceedings.  She suggests, without citation to authority, that she was entitled to an unbiased GAL.  We will consider Mother's bias argument first because we addressed the same issue in *Lemus v. Martinez*, 2021 WY 66, ¶¶ 17–30, 486 P.3d 1000, 1007–11 (Wyo. 2021), after Mother filed her appellate brief.

_____

[1] Father also filed a petition for a protection order against Mother based on the August 24, 2018 incident. However, Father testified in 2020 that he was not a victim of domestic violence, and he only filed the petition on the advice of counsel to be sure "both sides of the story were relayed to the court."  By the time of the 2020 trial, he had dropped his petition.

[¶15] Mother generally claims the GAL's bias was "obvious in her pleadings, her statements in court and her argument at trial." Specifically, Mother cites the GAL's response to Mother's motion to have her removed in which the GAL used the term "beloved father," and the GAL's custody modification closing argument where the GAL "affectionately compared [Father] to vanilla ice cream[,]" and criticized Mother for "requiring HRM to eat the school lunch[.]" Mother also points out that, at the 2018 hearing, the GAL requested the court allow Father's counsel to cross examine one of Mother's witnesses on her behalf because Father's counsel would know what questions to ask. She relies on the testimony of her three witnesses at the 2018 hearing to support her argument and claims the GAL's lack of investigation into her 2018 allegations further indicated the GAL was biased against her. Mother claims her relationship with the GAL had been "difficult and antagonistic" ever since Mother requested an itemized list of the GAL's fees following the divorce proceedings.[2]

[¶16] Similarly, the father in *Lemus* claimed the GAL in his case was biased against him and filed a motion to have her removed.[3] *See Lemus*, ¶ 8, 486 P.3d at 1004. On appeal, the father asserted the court violated his due process rights when, at the hearing on his motion to remove her, it denied his request to call the GAL to testify regarding her alleged bias. *See id.* ¶ 17, 486 P.3d at 1007. We identified the pertinent issue as: "whether [the father had] a protected right to a GAL who [was] unbiased against him." *Id.* ¶ 21, 486 P.3d at 1008. We answered that question in the negative, having found no cases holding that a parent has a constitutional right to a neutral and unbiased GAL. *See id.*

[¶17] We explained that the GAL's primary role is to advocate for the child. *See id.* ¶ 18, 486 P.3d at 1007. A GAL is not appointed to act as an objective decision maker between the parties, "but rather as an advocate for the child's best interests." *Id.* ¶ 24, 486 P.3d at 1009 (citing *Clark v. Alexander*, 953 P.2d 145, 154 (Wyo. 1998)). Because a GAL is obligated to act in the child's best interests, the "court may remove a GAL only for circumstances adverse to the child." *Id.* ¶ 28, 486 P.3d at 1010 (citing 43 C.J.S., *Infants*, § 438). Mother only claims that the GAL was biased against her. Applying *Lemus*, Mother had no right to an unbiased GAL. *See id.* ¶ 21, 486 P.3d at 1008.

_____

[2] The GAL does not dispute that the relationship between her and Mother was strained. However, the GAL contends that Mother's bias arguments manipulate the facts. Most notably, the GAL points to the accusation that she referred to Father affectionately in her custody modification argument. She claims that her description of Father as "vanilla" "hardly evidence[d] affection," and was instead an assessment that he was "pretty bland[.]" Rather than acting on bias against Mother when making her custody assessments, the GAL argues that she appropriately considered the Wyo. Stat. Ann. § 20-2-201 factors.

[3] His claims were similar to Mother's. He argued the GAL "may lack objectivity because she shares an office with his ex-wife's best friend." *Lemus*, ¶ 8, 486 P.3d at 1004. He believed her investigation into his allegations would be skewed in the mother's favor, pointed to a supposedly negative comment she made to him about his reputation, and claimed she defended the mother during the mother's deposition by objecting to questions and seeking to end the deposition early. *Id.* ¶ 8, 486 P.3d at 1004–05. He also said the GAL tried to purchase property from him during the litigation, but he refused to sell it to her to avoid any conflict of interest. *Id.* ¶ 8, 486 P.3d at 1005.

4

[¶18]  We next address Mother's contention that the court should have removed the GAL for not investigating Mother's 2018 abuse allegations during the modification proceedings. In particular, Mother takes issue with the GAL's motion to enforce the existing custody and visitation order, her recommendation to enforce visitation at the close of the 2018 hearing, and her recommendation to award Father physical custody at the close of the modification trial.

[¶19]  To support her argument, Mother relies solely on *Pace*, where we said:

> Full investigations of the facts relevant to custody should be completed by the [GAL], including interviewing witnesses deemed appropriate by the [GAL], custody evaluators, if any, counselors, teachers, relatives, and friends.  Based on the evidence, input from any experts, and their own best judgment, the [GALs] will develop their recommendations concerning custody.

*Pace v. Pace*, 2001 WY 43, ¶ 26, 22 P.3d 861, 870 (Wyo. 2001), *overruled on other grounds by Bruegman v. Bruegman*, 2018 WY 49, 417 P.3d 157 (Wyo. 2018); *see also Lemus*, ¶ 25, 486 P.3d at 1009.  First, we note that *Pace* and *Lemus* discuss the GAL's duty to investigate in the context of an initial custody determination, not a modification.  *See Pace*, ¶ 26, 22 P.3d at 870; *Lemus*, ¶ 25, 486 P.3d at 1009.  The GAL here did conduct an in-depth investigation into the facts relevant to HRM's custody prior to the initial custody determination.  The GAL interviewed 22 individuals, procured the services and opinions of a forensic psychologist, and summarized her findings in a lengthy report.[4]  She then actively participated in the modification proceedings when they began only a year later.[5] She filed various documents with the court, and listened to testimony, questioned witnesses, and presented argument regarding both temporary custody and custody modification.  According to the record, she relied on her initial investigation, the evidence presented, and her own best judgment when recommending that the court enforce visitation in 2018, and award Father primary custody in 2020.

[¶20]  Mother cites no authority, and we find none that requires the GAL, who has been active in the case from the outset and is familiar with the family history, to investigate all new allegations in the custody modification proceedings.  Equally important, Mother fails to explain what the GAL would have discovered—beyond Mother's and Father's

---

[4] The GAL did not provide her report to the court because Mother did not agree to it.  *See Pace*, ¶ 26, 22 P.3d at 870 ("If the parties agree, [a GAL's] recommendations should be provided to the court prior to trial.").

[5] "It is appropriate for a GAL to continue in a case after the trial court makes an initial custody determination and a parent claims custody or visitation should be changed." *Lemus*, ¶ 29, 486 P.3d at 1010.  This is because they possess institutional knowledge of the case and have "likely reached conclusions for or against one parent, based on the best interests of the child[]." *Id.*

conflicting versions of what occurred in the privacy of Father's home at 1:00 a.m. on August 24, 2018—had she investigated the new allegations. Mother instead only points back to the same general allegations she made below that Father abused her, HRM, and KDH—the same allegations the district court determined were not credible. Under these circumstances, we cannot conclude that the court abused its discretion by refusing to remove the GAL.

## II. *The district court adequately considered Mother's abuse allegations.*

[¶21]
> We employ a two-step analysis in determining a request for a change in custody or visitation. The first step requires a showing of a material change in circumstances since the most recent custody and/or visitation order. Once that is shown, the court determines whether a change of custody and/or visitation is in the child['s] best interests.

*Lemus*, ¶ 17, 486 P.3d at 1007 (quoting *Kidd v. Jacobson*, 2020 WY 64, ¶ 14, 463 P.3d 795, 798–99 (Wyo. 2020)). Mother does not take issue with the district court's finding that a material change in circumstances occurred when she alleged abuse by Father, got a protection order, and began preventing Father's visitation with HRM in 2018. Mother contends the district court failed to adequately consider her abuse allegations when, based on the change in circumstances, it awarded Father primary physical custody. We review a district court's child custody modification ruling for an abuse of discretion. *Rush v. Golkowski*, 2021 WY 27, ¶ 36, 480 P.3d 1174, 1182 (Wyo. 2021) (citation omitted).

[¶22] Mother relies on Wyo. Stat. Ann. § 20-2-201(c)(LexisNexis 2021), which requires that "[t]he court shall consider evidence of spousal abuse or child abuse as being contrary to the best interest of the child[]." The record shows that the district court did consider Mother's 2018 abuse allegations, and concluded they were not credible.

[¶23] The court thoroughly summarized both Mother's and Father's testimony regarding the August 24, 2018 incident. Mother testified that when she went to Father's house that morning, he at first opened his door to invite her in, then shoved the door into her when she approached. She claimed he then came at her, grabbed her arms, and ran her backwards into his porch railing. She yelled that he broke her ribs, he called her a drama queen, and he slammed his door. After laying there in pain and trying to catch her breath, she eventually limped back to her truck and left.

[¶24] Father testified he was sleeping when his doorbell rang around 1:00 a.m. Father said he did not want to let Mother inside because he did not want to repeat a night they had that May where she came to his house late at night and argued with him until 5:30 a.m. When Father refused to let her in, Mother began pushing until a shoving match ensued over

6

the door, Father slipped on a rug, and Mother was able to get inside. Father got up, grabbed Mother by the shoulders, pushed her out of his house, and locked his door. Mother's truck remained outside his house for another two hours.

[¶25] The court found Mother's recollection of the events "problematic." First, the court considered the context in which the incident occurred. Martha Motherway testified that she had been with Mother earlier that night while Mother consumed two or three beers during a concert, had "some drinks" at the Lander Bar, drove her food truck home, then returned to the Lander Bar and again "continued to have more beverages[.]" Ms. Motherway testified that she and Mother then got into an argument, and that Mother was being argumentative up until she dropped Ms. Motherway off at her home just before 1:00 a.m. Ms. Motherway also testified that Mother "vehemently, vehemently hates [Father], believes that he is a horrible father and that he needs to be gone, out of her children's life at all cost."

[¶26] The court also was concerned with the evidence regarding Mother's bruising. At the 2018 hearing, Mother entered into evidence photos that showed bruising along her entire right arm, her right ribs, and her left forearm. However, Martha Mueller, a nurse who examined Mother the day after the incident, testified that Mother showed no bruising, and that bruising on that part of the arm would likely appear within a day; Debra Scherf, who recalled Mother posting photos of her bruising to Facebook, testified she saw Mother three days after the incident and saw no bruises on her arm or ribs; and Dusty Citron, an acquaintance of both Mother and Father, testified that he observed similar bruising on Mother's arm a week before the incident. The court found Mr. Citron's testimony credible.

[¶27] Also "problematic" was Mother's claim at the 2018 hearing that she began withholding Father's visitation with HRM because HRM twice told her that Father "punched him in the guts." The court noted that Mother claimed she never reported this abuse to the police because she was "going off words of a five-year-old." It also found notable that Mother never mentioned such abuse in the affidavit that accompanied her petition to modify custody and motion for temporary custody. When asked why she did not include it, Mother said she forgot. The court acknowledged in its decision letter that Father "testified unequivocally that he did not punch [HRM] in the guts." The court expressly found Father's testimony more credible.

[¶28] We decline to disturb the court's credibility rulings. *See Boyce v. Jarvis*, 2021 WY 80, ¶ 30, 490 P.3d 320, 326 (Wyo. 2021) ("We generally defer to the district court's findings since it is in a better position to assess the witnesses' credibility, weigh the evidence and judge the respective merits and needs of the parties." (citation omitted)). The record makes abundantly clear that the court considered and discounted Mother's abuse

allegations prior to modifying custody. Mother has failed to establish that the court abused its discretion in doing so.[6]

## *CONCLUSION*

[¶29]  The district court did not abuse its discretion when it denied Mother's motion to remove and replace the GAL for the custody modification proceedings. The district court adequately considered Mother's abuse allegations prior to modifying custody. For those reasons, we affirm.

---

[6] Mother also argues that the court abused its discretion when it failed to put a safety plan in place for HRM as required by Wyo. Stat. Ann. § 20-2-201(c).  Having found that Mother's abuse allegations were not credible, the court had no reason to make any special arrangements for HRM's safety.